UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 24-40605 |
| REMARKABLE   HEALTHCARE   OF | § | |
| CARROLLTON, LP *et al.* | § | ***EX PARTE RELIEF*** AND |
| | § | EMERGENCY HEARING REQUESTED |
| Debtor(s). | § | |

**EMERGENCY MOTION TO LIFT AUTOMATIC STAY REGARDING
SEPT. 6, 2024 SEGUIN PAYROLL, SEGUIN PAYROLL TAXES, AND
FAILURE TO FILE AND SERVE PLAN**

---

**LBR 4001(a) NOTICE**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE[1] shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

**KRS DOES _NOT_ WAIVE THE 30-DAY HEARING REQUIREMENT AND REQUESTS AN EMERGENCY _FINAL_ HEARING (ASSUMING THAT EX PARTE RELIEF IS NOT GRANTED).**

---

**TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:**

KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC, creditors, landlords,

and parties in interest (collectively, "KRS"), files this *Motion to Lift Automatic Stay Regarding*

---

[1] KRS is filing concurrently with this motion a motion for emergency hearing.

*Sept. 6, 2024 Seguin Payroll, Seguin Payroll Taxes, and Failure to File and Serve Plan* (the "Motion") and in support thereof would show to the Court the following.

## EMERGENCY HEARING REQUESTED

1.    KRS is filing concurrently with this motion a motion for emergency hearing and seeking an emergency FINAL hearing on September 9, 2024.

2.    **KRS DOES *NOT* WAIVE THE 30-DAY HEARING REQUIREMENT AND REQUESTS AN EMERGENCY *FINAL* HEARING (ASSUMING THAT EX PARTE RELIEF IS NOT GRANTED).**

## EX PARTE RELIEF UNDER FED. R. BANKR. P. 4001(A)(2)

3.    KRS seeks immediate ex parte relief from the stay under Rule 4001(a)(2) which is provided below.

> **Rule 4001(a)(2**
>
> (2) Ex Parte Relief. Relief from a stay under §362(a) or a request to prohibit or condition the use, sale, or lease of property pursuant to §363(e) may be granted without prior notice only if (A) it clearly appears from specific facts shown by affidavit or by a verified motion that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or the attorney for the adverse party can be heard in opposition, and (B) the movant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons why notice should not be required. The party obtaining relief under this subdivision and §362(f) or §363(e) shall immediately give oral notice thereof to the trustee or debtor in possession and to the debtor and forthwith mail or otherwise transmit to such adverse party or parties a copy of the order granting relief. On two days notice to the party who obtained relief from the stay without notice or on shorter notice to that party as the court may prescribe, the adverse party may appear and move reinstatement of the stay or reconsideration of the order prohibiting or conditioning the use, sale, or lease of property. In that event, the court shall proceed expeditiously to hear and determine the motion.

4.    KRS submits that the failure to make payroll constitutes the circumstances where immediate and irreparable injury, loss, or damage will result to KRS if the stay is not lifted immediately to protect (1) the welfare and safety of the patients and (2) the continued operations of the Seguin facility.

5.      The Declaration of Josh Kilgore accompanies this Motion. *See* **Exhibit K113**.

6.      Notice will be provided contemporaneously with the filing of this Motion.

7.      Relief should be granted without notice due to numerous inquiries made to the Debtors that were ignored as shown below and the severity of the situation of not making payroll.

## INTRODUCTION

8.      RH-Seguin failed to make payroll on September 6, 2024 and issued checks without sufficient funds back up the checks.

9.      According to third party monitoring purchased by Alleon Capital Partners LLC ("Alleon"), RH-Seguin has not paid second quarter 2024 payroll taxes.

10.     All of the Debtors failed to file and serve a real Chapter 11 plan. The Debtor did not serve copies of the plan(s), and the plan(s) still lack the items required under Code §§ 1190(1)(b) and (c).

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this Motion pursuant to Sections 105, 363, 362, 365, 542, 553, and/or 1101 et seq. of the United States Bankruptcy Code, Title 11 of the U.S. Code, 11 U.S.C. §101 et seq. (the "Code" or "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or individually a "Bankruptcy Rule"), and 28 U.S.C. §§157 and 1334.

12.     This matter constitutes a core proceeding under 28 U.S.C. §157(b).

13.     Venue is proper under 28 U.S.C. §§1408 and 1409.

14.     The Court has constitutional authority to decide this Motion and enter final orders under *Stern v. Marshall*, 564 U.S. 462 (2011) and its progeny.

## FACTUAL BACKGROUND

**Debtor fails to make September 6, 2024 payroll in Seguin**

15.     On September 5, 2024, RH-Seguin paid $92,068.09 to KRS Seguin as the September, 2024 adequate protection payment per prior order of the Court (Docket No. 347).

16.     During the week on September 2, 2024, KRS Seguin made repeated inquiries of the Debtor as to how Debtor would make rent and payroll, based upon the apparent available cash within Debtor.



17.     Debtor provided no response to these inquiries.

18.     ***KRS asked in at least four separate emails on September 6, 2024 as to how the Debtor would make payroll, and no response was received.***

19.     Debtor ultimately did not have sufficient money for payroll that was due at Seguin on Friday, September 6, 2024.

20.    KRS also noted the resident trust account on Seguin shows a $0.00 balance.

21.    Instead of being forthcoming with the Court and creditors as to the inability to make payroll and the related effects on patient welfare and safety, the Debtor instead issued checks to all employees, but only had cash to cover about half of the payroll.  *See* **Exhibit K108**.



From: McPike, Jon <jemcpike@remarkablehealthcare.net>
Sent: Monday, September 9, 2024 8:51 AM
To: Johnny Thompson <jthompson@midcoasthealthsystem.org>
Cc: Trent Krienke <tkrienke@reedclaymon.com>; Heidi Dine <hdine@midcoasthealthsystem.org>; Liz Boydston <lboydston@gutnicki.com>; Max Schlan <mschlan@gutnicki.com>; Alexandria Rahn <arahn@gutnicki.com>
Subject: Re: Snippet of Seguin Money

I understand.  However, without the $56k returned to us today, we cannot meet our payroll need.  We have over $50k unfunded for payroll that was released on Friday because we were counting on the $56k.  Our billings being held up from the CHOW still haven't started coming in as needed to operate or pay you guys back.  We are working diligently on getting those dollars freed up.  Our Medicare has also been held up on Novitas's side.  Please allow us to meet our payroll,.  We did not request all sweeps, just what we need to meet payroll.

Thank you.

"I AM Remarkable Healthcare!"

Jon E. McPike
Chief Operating Officer
817-946-2552 Phone

22.    On information and belief, the Debtor asked half of the employees to hold their checks and not cash them until instructed by the Debtor.

23.    Debtors have testified on more than one occasions that they routinely cut paper checks even though insufficient funds are in the bank at the time of the issuance of the checks on a Friday or Monday payday, and rely upon collections to arrive after issuance of the as employees cash paper checks sporadically over the subsequent days.

24.    In the immediate situation and over the course of this case, the Debtor has thus violated repeatedly the Texas Peanl Code as to the issuance of checks without sufficient funds on hand in the account at the time of the issuance of the checks.

| **Texas Penal Code § 32.41** |
|---|
| **https://statutes.capitol.texas.gov/Docs/PE/htm/PE.32.htm** |
| Sec. 32.41.  ISSUANCE OF BAD CHECK OR SIMILAR SIGHT ORDER. <br><br> (a)  A person commits an offense if he issues or passes a check or similar sight order for the payment of money knowing that the issuer does not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order as well as all other checks or orders outstanding at the time of issuance. |

**Failure to pay post-petition payroll taxes, no response to inquiry.**

25.     On or about September 4, 2024, it came to the attention of KRS and Alleon that the Debtors appear to have not paid second quarter 2024 payroll taxes. *See* **Exhibit K109**.

26.     On September 4, 2024, KRS made inquiry as to the status of payroll taxes and reports, and has received no response from the Debtor.

**Subchapter V plans are facially unconfirmable**

27.     Debtor failed to file and serve an actual Subchapter V plan

28.     On August 19, 2024, the Debtor filed a placeholder Subchapter V plan (Docket No. 328) (the "Plan") to get past the extended Code § 1189 deadline and.

29.     On August 20, 2024, the Court entered the amended scheduling order for the Plan (Docket No 331).

30.     On August 27, 2024, based upon the postmarks affixed to the envelopes, the Debtor mailed the Plan and the separate plan for the DFW cases to all creditors.  To date, a certificate of service has not been filed.

31.     One would have thought that, having survived the lift stay and DIP removal hearings, that the Debtors would have prepared the necessary attachments to the plans and

amended the plans before solicitation so that they would be facially unconfirmable.  But, that didn't happen, and instead all of the Debtors have proceeded under facially unconfirmable plans.

32.   The DFW plan doesn't contain a liquidation analysis or projections.   Code §§ 1190(1)(B), (C).  *See* Docket No. 329, **Exhibit K106**.

33.   The Plan for Seguin doesn't contain a liquidation analysis.  Code § 1190(1)(B).  *See* Docket No. 328, **Exhibit K104**.

34.   The Plan contains an attempt at projections in the form of the Projected Disposable Income exhibit, but it is woefully deficient and thus fails to comply with Code § 1190(1)(C).

35.   For example, the exhibit fails to accurately describe the time periods that are covered by the exhibit, and absolutely fails to address a host of other obvious questions.

   a.   When does the 2024 year start?

   b.   Why are there two 2024 columns?

   c.   Why are there no monthly projections?

   d.   How and when are lease cures to be paid?

   e.   How and when are claims going to be paid?

36.   The exhibit provides zero information about how the Debtors intend to cure the monetary default as to the Seguin lease.

37.   The exhibit provides zero information about how the Debtors pay any claims whatsoever.

38.   The usual line items showing exit cash, creditor classes, and plan payments are entirely missing.

39.   Thus, there is no way to demonstrate the waterfall of payments.

40. Both plans contain overbroad third party releases that Debtors simply can't do under *Harrington v. Purdue Pharma*.

**Defective service and solicitation of Plans.**

41. The plans were not served to all creditors.

42. The scheduling orders required service of a copy of the Plan.

43. Debtor only mailed a single sheet of paper with QR code and no explanation as to why there is a QR code or how to request an actual electronic or physical copy of the Plan. See **Exhibit K111**, **Exhibit K112**.

44. No rule or prior order permits sending out only a QR code.

45. After almost two weeks, Omni appears not have filed a certificate of service regarding solicitation, which seems very unusual for a sophisticated third -party claims agent.

**A new operator may take over immediately.**

46. Termination of the stay will not jeopardize resident welfare. The principals of the KRS Landlords who are involved in the new operators of the DFW facilities have decades of experience in operating skilled nursing facilities, and are prepared to immediately take over operations at the Seguin facility.

**Additional facts supporting stay relief.**

47. Additional facts and evidence supporting stay relief exist which will be presented at the hearing on this Motion.

## RELIEF REQUESTED

48. Pursuant to Code §§ 362(d)(1) and/or §§ 362(d)(2), KRS Seguin respectfully requests that the Court immediately lift and terminate the automatic stay of Code §362(a) so that KRS Seguin immediately may enforce all of its remedies under the Seguin Lease.

49.     KRS Seguin also requests that the Court remove the 14-day stay of Bankruptcy Rule 4001(a)(3) so that the order lifting the stay shall be immediately enforceable.

50.     A proposed form of order is attached hereto and is incorporated by reference herein. Notice is provided that the final form of order may be changed at any hearing on this Motion.

## BASIS OF RELIEF

51.     Substantial cause exits to immediately terminate the automatic stay under Code §§ 362(d)(1) and/or §§ 362(d)(2).

52.     Cause exists to immediately lift, annul, and terminate the automatic stay of Code §362(a).

53.     Cause exists under Code §362(d)(1) as demonstrated above and as further explained below.

54.     The Debtor is administratively insolvent and cannot make payroll.

55.     The lack of payroll funding jeopardizes the operations of the Seguin facility, and the ability of the landlord and/or any successor operator to sustain patient care and operations at the facility.

56.     The Debtor, John McPike, and Liz Boydston, stuck their head in the sand on this issue during the week leading up to payroll, then kited checks, and then still have not come clean with the Court or creditors about the current predicament.

57.     In this instance, the Debtor blatantly has violated Texas Penal Code §32.41(a). The Debtors have admitted kiting checks as a normal cash management function, but this time they went too far in issuing checks and telling employees not to cash them.

58.     The Debtor also apparently has not paid substantial amounts of payroll taxes over the course of this case.

59.     This is nowhere disclosed, nor could creditors discover this fact due to the shoddy condition of the operating reports.

60.     As for the Plans, the Debtors really didn't to file plans in compliance with the basic, express requirements of Code § 1190.  There are no projections and no liquidation analysis.  The Debtors have thus gone past the Code §1189(b) deadlines, as extended, without any plan on file that satisfies the minimum express requirements of Code § 1190.

61.     Because the Plan as filed fails to meet the minimum express requirements of Code § 1190, there is really no plan at all that is on file for the purposes of Subchapter V.

62.     Then, the Debtors didn't actually serve the Plan.  They mailed a QR code on a single sheet of paper.  Although something like that might make sense to save costs, it at least requires prior permission of the Court.  No such permission was sought or obtained.

63.     Termination of the stay will not jeopardize resident welfare.  The principals of the KRS Landlords who are involved in the new operators of the DFW facilities have decades of experience in operating skilled nursing facilities, and are prepared to immediately take over operations at the Seguin facility.

64.     Furthermore, under Code §362(d)(2), the Debtor as a tenant of the Seguin facility has no equity in the Seguin facility, and the Debtor is not capable of an effective reorganization.

65.     The Debtor still cannot cure the backlog that is due under the Lease.

66.     The Debtor cannot clearly cannot make payroll and pay rent.

67.     The Debtor has filed to file a plan by the applicable deadline that fulfills the requirements of Code § 1190.

## IMMEDIATE RELIEF UNDER RULE 4001(A)(3)

68.     Cause exists for the order granting this Motion to be effective immediately such that the stay of Fed. R. Bankr. P. 4001(a)(3) not apply.

## RESERVATION OF RIGHTS

69.     Additional facts and evidence supporting stay relief under exist which will be presented at the hearing on this Motion.

## CONCLUSION AND PRAYER

WHEREFORE, KRS Seguin, LLC, creditor, and party in interest, respectfully requests that the Court lift, annul, and terminate the automatic stay of Code § 362(a), **_on an ex parte basis or otherwise on an emergency hearing_**, so that so that (i) KRS Seguin, LLC immediately may enforce any and all of its remedies under the Seguin Lease.  KRS Seguin further requests that the Court terminate the stay of Fed. R. Bankr. P. 4001(a)(3) and make the Order effective immediately upon entry.  Creditor respectfully requests such other and further relief to which Creditor is entitled at law or in equity.

**_{continued on following sheet}_**

Dated: September 9, 2024

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____/s/ Jeff Carruth_____

JEFF CARRUTH (TX SBN:. 24001846)
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com

ATTORNEYS FOR
KRS CARROLLTON LLC, KRS DALLAS LLC,
KRS SEGUIN, LLC, KRS FORT WORTH LLC,
AND KILGORE PROPERTY MANAGEMENT LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on September 9, 2024 (1) by electronic notice to all ECF users who have appeared in this case to date (2) by regular mail to all parties appearing in the attached address list (i.e. mailing matrix) obtained from the Court's PACER facility.

_____/s/ Jeff Carruth_____
JEFF CARRUTH

# ECF NOTICE LIST

**24-40605 Notice will be electronically mailed to (duplicates deleted):**

Matthew W. Bourda on behalf of Creditor Direct Energy Business
matthew@jonesmurray.com

Elizabeth Nicolle Boydston on behalf of Debtor Remarkable Healthcare of Carrollton, LP
lboydston@gutnicki.com

Lynn Hamilton Butler on behalf of Creditor Alleon Capital Partners, LLC
lynn.butler@huschblackwell.com,
penny.keller@huschblackwell.com;christine.deacon@huschblackwell.com;ryan.burgett@huschblackwell.com

Jeff Carruth on behalf of Creditor KRS Carrollton, LLC
jcarruth@wkpz.com,
jcarruth@aol.com;atty_carruth@trustesolutions.com;ATTY_CARRUTH@bluestylus.com;carruthjr87698@notify.bestcase.com;jcarruth@ecf.courtdrive.com

Alejandra Garcia Castro on behalf of Creditor Alleon Capital Partners, LLC
alejandra.garciacastro@huschblackwell.com

Jamie Kirk on behalf of Creditor Texas Comptroller of Public Accounts, Revenue Accounting Division
bk-jkirk@texasattorneygeneral.gov, sherri.simpson@oag.texas.gov

Buffey E. Klein on behalf of Creditor Alleon Capital Partners, LLC
buffey.klein@huschblackwell.com,
tanya.adams@huschblackwell.com;buffey-klein-8494@ecf.pacerpro.com

Aimee E. Marcotte on behalf of Creditor A Lawn and Landcare Services Company, LLC
amarcotte@popehardwicke.com

Brent W. Martinelli on behalf of Creditor Quintairos, Prieto, Wood and Boyer PA
brent.martinelli@qpwblaw.com, meioshei.nash@qpwblaw.com

Christopher S. Murphy on behalf of Interested Party Texas Health and Human Services Commission
bk-cmurphy@oag.texas.gov, sherri.simpson@oag.texas.gov

Julie Anne Parsons on behalf of Creditor The County of Denton, Texas
jparsons@mvbalaw.com,
kalexander@mvbalaw.com;theresa.king@mvbalaw.com;julie.parsons@ecf.courtdrive.com

Harrison Pavlasek on behalf of Creditor Quatro Tax LLC
hpavlasek@forsheyprostok.com

Jeff P. Prostok on behalf of Creditor Quatro Tax LLC
jprostok@forsheyprostok.com,
lbreedlove@forsheyprostok.com;calendar@forsheyprostok.com;Calendar_0573@ecf.courtdrive.com;jprostok@ecf.courtdrive.com;khartogh@ecf.courtdrive.com;khartogh@forsheyprostok.com;forsheyprostokllp@jubileebk.net

Alexandria Rahn on behalf of Debtor Remarkable Healthcare of Carrollton, LP
arahn@gutnicki.com,
docket@gutnicki.com;1694884420@filings.docketbird.com

Robert A. Simon on behalf of Creditor MedixCar LLC
rsimon@whitakerchalk.com,
bpeck@whitakerchalk.com;acopeland@whitakerchalk.com

Randy Sorrels on behalf of Creditor Joyce Dorrough Mallory
linda@sorrelslaw.com

Clay Marshall Taylor on behalf of Interested Party Management MCOA LLC
clay.taylor@dentons.com

Whitney Tharpe on behalf of Creditor United States Department of Health and Human Services
whitney.tharpe@usdoj.gov, guadalupe.garcia@usdoj.gov

John Kendrick Turner on behalf of Creditor City of Carrollton
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

John M. Vardeman on behalf of U.S. Trustee US Trustee
john.m.vardeman@usdoj.gov

Mark A WEISBART (SBRA V)
mweisbart@haywardfirm.com,
tsimmons@haywardfirm.com;ecf.alert+Weisbart@titlexi.com

## <u>REGULAR MAIL LIST / MATRIX</u>

A separate list will be filed as stand alone filing and supplement to this certificate of service.

**EXHIBIT K113**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| REMARKABLE HEALTHCARE OF | § | |
| CARROLLTON, LP *et al.* | § | Case No. 24-40605 |
| Debtor(s). | § | |
| | § | |

### DECLARATION OF JOSHUA KILGORE IN SUPPORT OF EMERGENCY MOTION TO LIFT AUTOMATIC STAY REGARDING SEPT. 6, 2024 SEGUIN PAYROLL, SEGUIN PAYROLL TAXES, AND FAILURE TO FILE AND SERVE PLAN

Joshua Kilgore, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.      My name is Joshua Kilgore. I am over the age of twenty-one (21) years, of sound mind, and competent to testify herein. I have personal knowledge of the facts stated herein and they are true and correct to the best of my knowledge and belief.

2.      This declaration was prepared and is being submitted as an exhibit to the *Emergency Motion to Lift Automatic Stay Regarding Sept. 6, 2024 Seguin Payroll, Seguin Payroll Taxes, and Failure to File and Serve Plan* (the "**Subject Motion**").

3.      Capitalized terms shall have the same meaning as ascribed to such terms in the Subject Motions unless otherwise defined herein.

4.      I am a Principal of KRS Dallas LLC, KRS Fort Worth LLC, KRS Fort Worth LLC, and Kilgore Property Management LLC (collectively, "Kilgore").

5.      I have read the Subject Motion, and the facts stated therein are true and correct.

6.      During the week on September 2, 2024, KRS Seguin made repeated inquiries of the Debtor as to how Debtor would make rent and payroll, based upon the apparent available cash within Debtor.

---

**DECLARATION OF JOSHUA KILGORE IN SUPPORT OF EMERGENCY MOTION TO LIFT AUTOMATIC STAY REGARDING SEPT. 6, 2024 SEGUIN PAYROLL, SEGUIN PAYROLL TAXES, AND FAILURE TO FILE AND SERVE PLAN — Page 1**

**EXHIBIT K113**



7.     Debtor provided no response to these inquiries.

**8.     KRS asked in at least four separate emails on September 6, 2024 as to how the Debtor would make payroll, and no response was received.**

9.     Debtor ultimately did not have sufficient money for payroll that was due at Seguin on Friday, September 6, 2024.

10.     KRS also noted the resident trust account on Seguin shows a $0.00 balance.

11.     The failure of Seguin to make payroll and requesting employees to hold checks creates an immediate danger to the continuity of operations at the Seguin facility, and thus jeopardizes the welfare and safety of the patients.

12.     The failure to pay rent over several months, the failure to pay payroll taxes, and the failure to make payroll on now at least three occasions without outside financial assistance, among many other factors, demonstrate the lack of economic viability of these Debtors.

**EXHIBIT K113**

13.     KRS did not receive a copy of the plan in the mail, and thus KRS must have received the same solicitation mail out as all other creditors.

14.     Termination of the stay will not jeopardize resident welfare.  The principals of the KRS Landlords who are involved in the new operators of the DFW facilities have decades of experience in operating skilled nursing facilities, and are prepared to immediately take over operations at the Seguin facility.

FURTHER DECLARANT SAYETH NOT

Dated: September 9, 2024

/s/ Josh Kilgore
                Joshua Kilgore

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REMARKABLE HEALTHCARE OF | § | Case No. 24-40605 |
| CARROLLTON, LP *et al.* | § | |
| | § | |
| Debtor(s). | § | |

**ORDER GRANTING EMERGENCY MOTION TO LIFT AUTOMATIC STAY REGARDING SEPT. 6, 2024 SEGUIN PAYROLL, SEGUIN PAYROLL TAXES, AND FAILURE TO FILE AND SERVE PLAN (RE: DOCKET NO. 353**

On September 9, 2024, the considered on an ex parte basis the *Motion to Lift Automatic Stay Regarding Sept. 6, 2024 Seguin Payroll, Seguin Payroll Taxes, and Failure to File and Serve Plan* (Docket No. 353) (the "Motion") filed herein on September 9, 2024 by KRS Carrollton, LLC, KRS Dallas, LLC, and KRS Fort Worth, LLC, creditors, landlords, and parties in interest (collectively, "KRS"). The Court finds and concludes that upon review of the record of this case and with respect to the Motion that cause exists to grant the relief requested therein, including the threshold requirements for ex parte relief under Fed. R. Bankr. P. 4001(a)(2) *including that immediate and irreparable injury, loss, or damage will result to KRS and/or to the patients of the Seguin facility if ex parte immediate relief from the stay is not granted with respect to the failure of the Debtor to make payroll at the Seguin facility with the September 6, 2024 payroll.*

**IT IS THEREFORE ORDERED THAT:**

1.    The Motion is granted as set forth herein.

2.    All capitalized terms shall have the same meaning as ascribed to such terms in the Motion, unless otherwise defined herein.

3.    Effectively immediately upon entry of this order, the automatic stay of 11 U.S.C. §362(a) is hereby lifted, annulled, and terminated so that KRS Seguin LLC

immediately may enforce any and all rights and remedies available to KRS Seguin LLC with respect and/or in relation to the lease between KRS Seguin LLC and Remarkable Healthcare of Seguin LLC for the skilled nursing facility located at 1339 Eastwood Dr, Seguin, TX 78155.

4.    The relief granted by this Order is effectively immediately, and the stay of Fed. R. Bankr. P. 4001(a)(3) does not and shall not apply.

Dated: _____

_____
THE HONORABLE BRENDA T. RHOADES
UNITED STATES BANKRUPTCY JUDGE

Submitted by:

Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, Texas 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com

ATTORNEYS FOR ATTORNEYS FOR
KRS CARROLLTON LLC, KRS DALLAS LLC,
KRS SEGUIN, LLC, KRS FORT WORTH LLC,
AND KILGORE PROPERTY MANAGEMENT LLC

**EXHIBIT K109**

**From:** McPike, Jon <jemcpike@remarkablehealthcare.net>
**Sent:** Monday, September 9, 2024 8:51 AM
**To:** Johnny Thompson <jthompson@midcoasthealthsystem.org>
**Cc:** Trent Krienke <tkrienke@reedclaymon.com>; Heidi Dine <hdine@midcoasthealthsystem.org>; Liz Boydston <lboydston@gutnicki.com>; Max Schlan <mschlan@gutnicki.com>; Alexandria Rahn <arahn@gutnicki.com>
**Subject:** Re: Snippet of Seguin Money

I understand. However, without the $56k returned to us today, we cannot meet our payroll need. We have over $50k unfunded for payroll that was released on Friday because we were counting on the $56k. Our billings being held up from the CHOW still haven't started coming in as needed to operate or pay you guys back. We are working diligently on getting those dollars freed up. Our Medicare has also been held up on Novitas's side. Please allow us to meet our payroll.. We did not request all sweeps, just what we need to meet payroll.

Thank you.

"I AM Remarkable Healthcare!".
signature_724153813.



Jon E. McPike
Chief Operating Officer
817-946-2552 Phone
signature_2550487369

"In every one's life comes one undeniable moment of change that never stops mattering." Terry Kay

This e-mail message (including any attachments) may contain information that is confidential or, otherwise, competing non-public information. This message is intended to be conveyed only to the designated recipient(s). If you have any reason to believe you are not an intended recipient of this message, please notify the sender by replying to this message and then deleting it from your system. Any use, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

**From:** Johnny Thompson <jthompson@midcoasthealthsystem.org>
**Date:** Monday, September 9, 2024 at 8:41 AM
**To:** Jon McPike <jemcpike@remarkablehealthcare.net>
**Cc:** Trent Krienke <tkrienke@reedclaymon.com>, Johnny Thompson <jthompson@midcoasthealthsystem.org>, Heidi Dine <hdine@midcoasthealthsystem.org>
**Subject:** Fw: Snippet of Seguin Money

Jon - See below of the funds related to Medicaid.

Johnny Thompson
Administrator
West Wharton County Hospital District
303 Sandy Corner Rd
El Campo, TX 77437
Cell 361-771-6391

**From:** Brittany Butts <bbutts@midcoasthealthsystem.org>
**Sent:** Monday, September 9, 2024 8:38 AM
**To:** Johnny Thompson <jthompson@midcoasthealthsystem.org>
**Subject:** Snippet of Seguin Money



*Brittany Butts*
*QIPP Financial Analyst*
*West Wharton County Hospital District*
*303 Sandy Corner Rd.*
*El Campo, TX  77437*
*979-543-6231 X489*

EXHIBIT K109 - Page 2



Date: 09.01.2024   **Lender:** Alleon Capital Partners, LLC

**EXHIBIT K110**



| | TAX RISK SCORE: | TOTAL LIABILITY | INSTALLMENT AGREEMENT |
|---|---|---|---|
| CLIENT NAME: | **83** | **$351,548.81** | None |

**Remarkable Healthcare of Seguin,**

**ENTITY:** Partnership

**ESTABLISHED DATE:** 07.2010

**EIN:** •• ••4566

**FILING REQS.:** Civil Penalty, 940, 941, 1065

| | Liability w/ Liens Filed | In Installment Agreement |
|---|---|---|
| | **$0.00** | **$0.00** |
| | Liability At Risk For Levy | Not In Installment Agreement |
| | **$0.00** | **$351,548.81** |

## LIABILITIES:

| FORM | PERIOD | RETURN FILED | LIABILITY | LEVY RISK DATE | LIEN DATE |
|---|---|---|---|---|---|
| 941 | 2023 Q4 | $94,375.04 | $31,436.66 | -- | -- |
| 941 | 2024 Q1 | $148,819.66 | $179,967.00 | -- | -- |
| 941 | 2024 Q2 | $125,039.41 | $140,145.15 | -- | -- |

## UNFILED RETURNS:

| FORM | PERIOD(S) | DEPOSIT(S) | RETURN STATUS |
|---|---|---|---|
| 940 | 2010 - 2016 | $0.00 | Unfiled |
| 941 | 2010 Q3 - 2016 Q4 | $0.00 | Unfiled |
| 1065 | 2010.12 - 2011.12 | $0.00 | No Data Found |
| 1065 | 2023.12 | $0.00 | Extension |

## DEPOSITS:

| FORM | PERIOD | DEPOSIT | RETURN STATUS |
|---|---|---|---|
| 940 | 2023 | $4,815.29 | -- |
| 940 | 2024 | $0.00 | -- |
| 941 | 2024 Q3 | $0.00 | -- |
| 1065 | 2024.12 | $0.00 | -- |

**LENDER:**   Alleon Capital Partners, LLC   **CLIENT:**   Remarkable Healthcare of Seguin, LP   **DATE:** 09.01.2024   **PAGE:**   1/2

**EXHIBIT K110 - Page 1**

**KEY:**

**LEVY RISK DATE =** The IRS can levy or seize property regardless of whether the IRS issued a federal tax lien.

**LIEN =** Secures the government's interest and establishes priority.

**GOOD STANDING =** There are no periods of liability outside the agreement or missing returns.

**POTENTIAL FOR DEFAULT =** There are one or more periods of liability outside the agreement or one or more missing returns.

**RETURN FILED =** Amount due on the return when filed.

**Exhibit RY10 - Page 2**

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

**EXHIBIT K111**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| REMARKABLE HEALTHCARE OF | § | Case No. 24-40605 |
| CARROLTON LP, ET AL.,[1] | § | |
| | § | |
| Debtors. | § | (Jointly Administered) |

## JOINT SUBCHAPTER V PLAN OF REORGANIZATION FOR REMARKABLE HEALTHCARE OF SEGUIN LP AND REMARKABLE HEALTHCARE, LLC

Liz Boydston (SBN 24053684)           Max Schlan (Admitted Pro Hac Vice)
Alexandria Rahn (SBN 24110246)        Gutnicki LLP
Gutnicki LLP                          45 Rockefeller Plaza, Suite 2000
10440 N. Central Expy., Suite 800     New York, New York 10111
Dallas, Texas 75231                   Telephone: (646) 825-2330
Telephone: (469) 935-6699             Facsimile: (646) 825-2330
Facsimile: (469) 935-6699             mschlan@gutnicki.com
lboydston@gutnicki.com
arahn@gutnicki.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

*https://omniagentsolutions.com/Remarkable-PlanofReorganization*



---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DISTRICT

IN RE:                                           §
                                                 §          **Case No. 24-40605**
**Remarkable Healthcare of Carrollton, LP**      §
**Remarkable Healthcare, LLC**                   §
**Remarkable Healthcare of Seguin, LP**          §
**Remarkable Healthcare of Fort Worth, LP and**  §
**Remarkable Healthcare of Dallas, LP**          §
                                                 §
      **Debtors.**                               §

## AMENDED ORDER SETTING PLAN RELATED DEADLINES
## AND HEARING ON CONFIRMATION
## (SMALL BUSINESS DEBTOR — SUBCHAPTER V)

On **August 19, 2024**, **Remarkable Healthcare, LLC** and **Remarkable Healthcare of**

**Seguin, LP** (the "Debtors") filed a Joint Subchapter V Plan of Reorganization for Remarkable

Healthcare of Sequin LP and Remarkable Healthcare LLC [Doc 328], and in light of the Debtors'

election to have subchapter V of chapter 11 apply to this case, the Court finds cause for entry of

this Order.

**IT IS THEREFORE ORDERED, AND NOTICE IS HEREBY GIVEN, THAT:**

A.      On or before **August 27, 2024**, a copy of this Order, the Debtors' proposed Chapter

11 Plan, and a ballot conforming to Official Form 14 shall be mailed to creditors, equity security

holders, and other parties in interest, and shall be transmitted to the United States Trustee, as

provided in Federal Rule of Bankruptcy Procedure 3017(d); however, in accordance with 11

U.S.C. §1126(f), acceptances and rejections will not be solicited from any class that is not impaired

under the proposed plan;

B.      **September 29, 2024** is fixed as the last day for submitting written acceptances or

rejections of the Debtors' proposed Chapter 11 plan which must be received by **5:00 p.m. (CDT)**

1

**EXHIBIT K111 - Page 3**

on that date at the offices of **Elizabeth Nicolle Boydston, Gutnicki LLP, 10440 North Central,**

**Expressway,     Suite     800,     Dallas,     TX     7523**     or     online     at

https://cases.omniagentsolutions.com/remarkablehealthcare, and no acceptances or rejections

received after the stated deadline shall be counted or otherwise included in the tabulation of

acceptances and rejections of the Debtors' proposed Chapter 11 plan without further Court order;

    C.    **September 27, 2024** is fixed as the last day for filing and serving written objections

to confirmation of the Debtors' proposed Chapter 11 plan pursuant to Federal Rule of Bankruptcy

Procedure 3020(b)(1) and all comments or objections not timely filed and served by such deadline

shall be deemed waived;

    D.    The hearing to consider the confirmation of the Debtors' proposed Chapter 11 Plan

is fixed and shall be held on **October 2, 2024 at 1:30 p.m.** in the Plano Bankruptcy Courtroom,

660 N. Central Expressway, Third Floor, Plano, Texas 75074, which hearing may be adjourned or

continued to a different date without further notice other than notice given in open court at such

hearing.

Signed on 08/23/2024

*Brenda T. Rhoades*     SD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT K111 - Page 4**

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| REMARKABLE HEALTHCARE OF | § | Case No. 24-40605 |
| CARROLTON LP, ET AL.,[1] | § | |
| | § | |
| Debtors. | § | (Jointly Administered) |

## BALLOT FOR ACCEPTING OR REJECTING JOINT SUBCHAPTER V PLAN OF REORGANIZATION FOR REMARKABLEHEALTHCARE OF SEGUIN LP AND REMARKABLE HEALTHCARE, LLC

### CLASS 3 – General Unsecured Claims

---

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT ON OR BEFORE 5:00 P.M. (PREVAILING CENTRAL TIME) ON **SEPTEMBER 29, 2024** (THE "**VOTING DEADLINE**").

---

**Remarkable Healthcare, LLC** and **Remarkable Healthcare of Sequin, LP** (the "**Debtors**") filed their *Joint Subchapter V Plan of Reorganization for Remarkable Healthcare of Seguin LP and Remarkable Healthcare, LLC* (as may be amended, supplemented, or modified from time to time, the "**Plan**"). A copy of the Plan is enclosed with this Ballot, along with a copy of the Court's Order approving, *inter alia*, procedures for soliciting votes on the Plan (the "**Plan Procedures Order**"). An electronic copy of the plan may be found at: https://omniagentsolutions.com/Remarkable. If you wish to receive a paper copy of the Plan at no cost to you, please contact the Balloting Agent at (866) 205-3143 (toll free) or (818) 528-5347 or emailing RemarkableHealthcareInquiries@omniagnt.com.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

### IMPORTANT

**You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your Claim has been placed in Class 3 – General Unsecured Claims under the Plan.**

**If your Ballot is not *actually received* by the Balloting Agent on or before the Voting Deadline, and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.**

**You may submit your Ballot electronically, via the Balloting Portal, or in the return envelope provided in your package, as follows:**

### If by Online Balloting Portal:

**Ballots may be submitted by upload through the Balloting Agent's online Ballot submission portal, https://omniagentsolutions.com/Remarkable-Ballots (the "Balloting Portal") by no later than the Voting Deadline. Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote. Ballots cast by facsimile, e-mail or other electronic transmission, except through the Balloting Portal, will not be counted.**

### If by First Class Mail, Postage Prepaid,
### Personal Delivery, or Overnight Courier:
**Remarkable Healthcare of Carrollton, LP, et al. Ballot Processing**
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

**PLEASE READ THE ATTACHED INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

If you have any questions regarding this Ballot or the voting procedures, or if you need a Ballot or additional copies of the Plan or other enclosed materials, please contact the Balloting Agent, at (866) 205-3143 (toll free) or (818) 528-5347, or by email at RemarkableHealthcareInquiries@omniagnt.com.

This Ballot shall not constitute or be deemed to be a Proof of Claim or an assertion of a Claim.

1.      The undersigned holder holds a Class 3 Claim in the amount of $_____:

*Check one box only:*

          ❑ ACCEPTS the Plan          OR          ❑ REJECTS the Plan

2.      **Acknowledgement and Certification.** By signing this Ballot, you acknowledge receipt of the Plan and the Plan Procedures Order, and you certify that you are the holder of the foregoing Claim(s) or have the power and authority to vote to accept or reject the Plan on behalf of such holder.

        Name of Creditor:_____

        Signature:_____

        Name of Signatory (print):_____

        Title of Signatory (if applicable):_____

        Street Address:_____

        City, State, Zip Code:_____

        Dated:_____

---

YOUR VOTE MUST BE FORWARDED IN SUFFICIENT TIME TO BE **RECEIVED** BY THE BALLOTING AGENT BY 5:00 P.M. (PREVAILING CENTRAL TIME) ON **SEPTEMBER 29, 2024** OR YOUR VOTE WILL NOT BE COUNTED. IT IS **NOT** SUFFICIENT FOR YOUR BALLOT TO BE POST-MARKED BY THE VOTING DEADLINE. FACSIMILE OR ELECTRONIC TRANSMISSION OF THIS BALLOT WILL NOT BE ACCEPTED AND WILL NOT BE COUNTED.

---

## VOTING INSTRUCTIONS

1.      All capitalized terms used in the Ballot or Voting Instructions but not otherwise defined therein shall have the meaning ascribed to them in the Plan.

2.      Please read and follow these instructions carefully.

3.      In order for your vote to count, you must do all of the following:

- Cast one vote to accept or reject the Plan by checking the appropriate box in Item 1;

- Review the Acknowledgment and Certification in Item 2;

- Fully complete all information requested on the Ballot;

- Sign and date the Ballot where indicated; and

- Return the Ballot to the Balloting Agent in accordance with the instructions set forth herein.

4.      PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:

**Via Paper Ballot**. To ensure your vote is counted, you must complete, sign and return this Ballot to the address set forth on the enclosed envelope provided. *Physical Ballots not bearing an original signature will not be counted*. Physical Ballots must be actually received by the Balloting Agent by first class mail, overnight courier or hand delivery not later than **September 29, 2024 at 5:00 p.m. (Central Time)** at the following address:

**If by First Class Mail, Overnight Courier or Hand Delivery:**

**Remarkable Healthcare of Carrollton, LP, et al. Ballot Processing**
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

OR

**Via Balloting Portal**. Submit your Ballot by upload via the Balloting Agent's online portal, by visiting https://omniagentsolutions.com/Remarkable-Ballots (the "**Balloting Portal**").

The Balloting Agent's Online Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will NOT be counted.

Creditors who cast a Ballot using the online Balloting Portal should **NOT** also submit a paper Ballot.

5. THE BALLOT YOU SUBMIT MUST BEAR YOUR ORIGINAL SIGNATURE, UNLESS SUBMITTED ELECTRONICALLY. DO NOT SUBMIT YOUR BALLOT BY FAX, EMAIL, OR ELECTRONIC TRANSMISSION, UNLESS VIA THE BALLOTING PORTAL. A Ballot submitted by fax, email, or electronic transmission, other than via the Balloting Portal, will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6. If you believe you received a Ballot in error, or if you need another Ballot, please contact the Balloting Agent immediately.

7. The Ballot does not constitute and shall not be deemed to be a Proof of Claim or an assertion or admission of a claim.

8. Please take note of the following voting and tabulation procedures:

- Creditors shall not split their votes and each creditor shall be deemed to have voted the full amount of its Claim to either accept or reject the Plan;

- Ballots that are properly executed and timely returned, but which: (i) fail to designate a vote of acceptance or rejection of the Plan; (ii) indicate both acceptance and rejection of the Plan; or (iii) otherwise partially accept or partially reject the Plan, shall not be counted;

- If a creditor casts more than one Ballot voting the same Claim prior to the Voting Deadline, the latest timely received, properly executed Ballot submitted to the Balloting Agent will supersede any prior Ballot;

- Any Ballot received after the Voting Deadline will not be counted, unless the Debtors or the Court extend the Voting Deadline; provided, however, that if the Voting Deadline has not been extended by the Court, the counting of any ballot submitted after the Voting Deadline shall be subject to Court approval if challenged by any party in interest in the cases;

- Pursuant to Bankruptcy Rule 3018(a), any creditor who seeks to withdraw an acceptance or rejection of the Plan at any time, or seeks to change their vote after Voting Deadline, must seek Court approval of the same, upon a motion on notice to parties in interest;

- Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted; and

- Any Ballot cast by a person or entity that is not entitled to vote on the Plan will not be counted.

**PLEASE SUBMIT YOUR BALLOT SO THAT IT IS RECEIVED BY THE VOTING DEADLINE. Your Ballot must be submitted so that it is actually <u>received</u> by the Balloting Agent no later than 5:00 P.M. (Prevailing Central Time), on <u>September 29, 2024</u> (the "<u>Voting Deadline</u>").**

PLEASE NOTE THAT THE BALLOTING AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE. YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

**EXHIBIT K112**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| REMARKABLE HEALTHCARE OF | § | Case No. 24-40605 |
| CARROLTON LP, ET AL.,[1] | § |  |
|  | § |  |
| Debtors. | § | (Jointly Administered) |

## DEBTORS'[2] JOINT SUBCHAPTER V PLAN OF LIQUIDATION

Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
Gutnicki LLP
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 935-6699
Facsimile: (469) 935-6699
lboydston@gutnicki.com
arahn@gutnicki.com

Max Schlan (Admitted Pro Hac Vice)
Gutnicki LLP
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

*https://omniagentsolutions.com/Remarkable-PlanofLiquidation*



---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

[2] The specific Debtors proposing the Subchapter V Joint Plan of Liquidation are Debtors Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth.

EXHIBIT K112 - Page 2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DISTRICT**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 24-40605** |
| **Remarkable Healthcare of Carrollton, LP** | § | |
| **Remarkable Healthcare, LLC** | § | |
| **Remarkable Healthcare of Seguin, LP** | § | |
| **Remarkable Healthcare of Fort Worth, LP and** | § | |
| **Remarkable Healthcare of Dallas, LP** | § | |
| | § | |
| Debtors. | § | |

**AMENDED ORDER SETTING PLAN RELATED DEADLINES**
**AND HEARING ON CONFIRMATION**
**(SMALL BUSINESS DEBTOR — SUBCHAPTER V)**

On **August 19, 2024**, **Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Fort Worth, LP and Remarkable Healthcare of Dallas, LP** (the "Debtors") filed Debtors' Subchapter V Joint Plan of Liquidation [Doc 329], and in light of the Debtors' election to have subchapter V of chapter 11 apply to this case, the Court finds cause for entry of this Order.

**IT IS THEREFORE ORDERED, AND NOTICE IS HEREBY GIVEN, THAT:**

A.     On or before **August 27, 2024**, a copy of this Order, the Debtors' proposed Chapter 11 Plan, and a ballot conforming to Official Form 14 shall be mailed to creditors, equity security holders, and other parties in interest, and shall be transmitted to the United States Trustee, as provided in Federal Rule of Bankruptcy Procedure 3017(d); however, in accordance with 11 U.S.C. §1126(f), acceptances and rejections will not be solicited from any class that is not impaired under the proposed plan;

B.     **September 29, 2024** is fixed as the last day for submitting written acceptances or rejections of the Debtors' proposed Chapter 11 plan which must be received by 5:00 p.m. (CDT) on that date at the offices of **Elizabeth Nicolle Boydston, Gutnicki LLP, 10440 North Central,**

1

**EXHIBIT K112 - Page 3**

**Expressway, Suite 800, Dallas, TX 7523** or online at https://cases.omniagentsolutions.com/remarkablehealthcare, and no acceptances or rejections received after the stated deadline shall be counted or otherwise included in the tabulation of acceptances and rejections of the Debtors' proposed Chapter 11 plan without further Court order;

C. **September 27, 2024** is fixed as the last day for filing and serving written objections to confirmation of the Debtors' proposed Chapter 11 plan pursuant to Federal Rule of Bankruptcy Procedure 3020(b)(1) and all comments or objections not timely filed and served by such deadline shall be deemed waived;

D. The hearing to consider the confirmation of the Debtors' proposed Chapter 11 Plan is fixed and shall be held on **October 2, 2024 at 1:30 p.m.** in the Plano Bankruptcy Courtroom, 660 N. Central Expressway, Third Floor, Plano, Texas 75074, which hearing may be adjourned or continued to a different date without further notice other than notice given in open court at such hearing.

Signed on 08/23/2024

*Brenda T. Rhoades*      SD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

2

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| REMARKABLE HEALTHCARE OF CARROLTON LP, ET AL.,[1] | § § § | Case No. 24-40605 |
| Debtors. | § § | (Jointly Administered) |

## BALLOT FOR ACCEPTING OR REJECTING DEBTORS'[2] JOINT SUBCHAPTER V PLAN OF LIQUIDATION

### CLASS 3 – General Unsecured Claims

---

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS
BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE COMPLETED, EXECUTED AND RETURNED SO THAT IT IS
ACTUALLY RECEIVED BY THE BALLOTING AGENT ON OR BEFORE 5:00 P.M.
(PREVAILING CENTRAL TIME) ON **SEPTEMBER 29, 2024** (THE "**VOTING
DEADLINE**").

---

**On August 19, 2024, Remarkable Healthcare of Carrollton, LP, Remarkable
Healthcare of Fort Worth, LP, and Remarkable Healthcare of Dallas, LP** (the "**DFW
Debtors**") filed the *Debtors' Joint Subchapter V Plan of Liquidation* (as may be amended,
supplemented, or modified from time to time, the "**Plan**"). A copy of the Plan is enclosed with
this Ballot, along with a copy of the Court's Order approving, *inter alia*, procedures for soliciting
votes on the Plan (the "**Plan Procedures Order**"). An electronic copy of the plan may be found
at: https://omniagentsolutions.com/Remarkable. If you wish to receive a paper copy of the Plan at
no cost to you, please contact the Balloting Agent at (866) 205-3143 (toll free) or (818) 528-5347
or emailing RemarkableHealthcareInquiries@omniagnt.com.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418),
Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable
Healthcare, LLC (5142).

[2] The specific Debtors proposing the Subchapter V Joint Plan of Liquidation are Debtors Remarkable Healthcare of
Carrollton, LP, Remarkable Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth.

## IMPORTANT

You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your Claim has been placed in Class 3 - General Unsecured Claims under the Plan.

If your Ballot is not *actually received* by the Balloting Agent on or before the Voting Deadline, and such deadline is not extended in the sole discretion of the Debtors, your vote will not count as either an acceptance or rejection of the Plan. If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.

You may submit your Ballot electronically, via the Balloting Portal, or in the return envelope provided in your package, as follows:

### If by Online Balloting Portal:

Ballots may be submitted by upload through the Balloting Agent's online Ballot submission portal, https://omniagentsolutions.com/Remarkable-Ballots (the "Balloting Portal") by no later than the Voting Deadline. Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote. Ballots cast by facsimile, e-mail or other electronic transmission, except through the Balloting Portal, will not be counted.

### If by First Class Mail, Postage Prepaid, Personal Delivery, or Overnight Courier:
Remarkable Healthcare of Carrollton, LP, et al. Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

**PLEASE READ THE ATTACHED INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

If you have any questions regarding this Ballot or the voting procedures, or if you need a Ballot or additional copies of the Plan or other enclosed materials, please contact the Balloting Agent, at (866) 205-3143 (toll free) or (818) 528-5347, or by email at RemarkableHealthcareInquiries@omniagnt.com.

This Ballot shall not constitute or be deemed to be a Proof of Claim or an assertion of a Claim.

1.    The undersigned holder holds a Class 3 Claim in the amount of $_____$ :

*Check one box only:*

☐ ACCEPTS the Plan          OR          ☐ REJECTS the Plan

2.    **Acknowledgement and Certification**. By signing this Ballot, you acknowledge receipt of the Plan and the Plan Procedures Order, and you certify that you are the holder of the foregoing Claim(s) or have the power and authority to vote to accept or reject the Plan on behalf of such holder.

Name of Creditor:_____

Signature:_____

Name of Signatory (print):_____

Title of Signatory (if applicable):_____

Street Address:_____

City, State, Zip Code:_____

Dated:_____

---

YOUR VOTE MUST BE FORWARDED IN SUFFICIENT TIME TO BE **RECEIVED** BY THE BALLOTING AGENT BY 5:00 P.M. (PREVAILING CENTRAL TIME) ON **SEPTEMBER 29, 2024** OR YOUR VOTE WILL NOT BE COUNTED. IT IS **NOT** SUFFICIENT FOR YOUR BALLOT TO BE POST-MARKED BY THE VOTING DEADLINE. FACSIMILE OR ELECTRONIC TRANSMISSION OF THIS BALLOT WILL NOT BE ACCEPTED AND WILL NOT BE COUNTED.

## VOTING INSTRUCTIONS

1.    All capitalized terms used in the Ballot or Voting Instructions but not otherwise defined therein shall have the meaning ascribed to them in the Plan.

2.    Please read and follow these instructions carefully.

3.    In order for your vote to count, you must do all of the following:

- Cast one vote to accept or reject the Plan by checking the appropriate box in Item 1;

- Review the Acknowledgment and Certification in Item 2;

- Fully complete all information requested on the Ballot;

- Sign and date the Ballot where indicated; and

- Return the Ballot to the Balloting Agent in accordance with the instructions set forth herein.

4.    PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:

**Via Paper Ballot**. To ensure your vote is count. 1, you must complete, sign and return this Ballot to the address set forth on the enclosed envelope provided. *Physical Ballots not bearing an original signature will not be counted.* Physical Ballots must be actually received by the Balloting Agent by first class mail, overnight courier or hand delivery not later than **September 29, 2024 at 5:00 p.m. (Central Time)** at the following address:

**If by First Class Mail, Overnight Courier or Hand Delivery:**

**Remarkable Healthcare of Carrollton, LP, et al. Ballot Processing**
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

OR

**Via Balloting Portal**. Submit your Ballot by upload via the Balloting Agent's online portal, by visiting https://omniagentsolutions.com/Remarkable-Ballots (the **"Balloting Portal"**).

The Balloting Agent's Online Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will NOT be counted.

Creditors who cast a Ballot using the online Balloting Portal should **NOT** also submit a paper Ballot.

5. THE BALLOT YOU SUBMIT MUST BEAR YOUR ORIGINAL SIGNATURE, UNLESS SUBMITTED ELECTRONICALLY. DO NOT SUBMIT YOUR BALLOT BY FAX, EMAIL, OR ELECTRONIC TRANSMISSION, UNLESS VIA THE BALLOTING PORTAL. A Ballot submitted by fax, email, or electronic transmission, other than via the Balloting Portal, will not be counted, unless approved by the Debtors in writing or otherwise ordered by the Court.

6. If you believe you received a Ballot in error, or if you need another Ballot, please contact the Balloting Agent immediately.

7. The Ballot does not constitute and shall not be deemed to be a Proof of Claim or an assertion or admission of a claim.

8. Please take note of the following voting and tabulation procedures:

- Creditors shall not split their votes and each creditor shall be deemed to have voted the full amount of its Claim to either accept or reject the Plan;

- Ballots that are properly executed and timely returned, but which: (i) fail to designate a vote of acceptance or rejection of the Plan; (ii) indicate both acceptance and rejection of the Plan; or (iii) otherwise partially accept or partially reject the Plan, shall not be counted;

- If a creditor casts more than one Ballot voting the same Claim prior to the Voting Deadline, the latest timely received, properly executed Ballot submitted to the Balloting Agent will supersede any prior Ballot;

- Any Ballot received after the Voting Deadline will not be counted, unless the Debtors or the Court extend the Voting Deadline; provided, however, that if the Voting Deadline has not been extended by the Court, the counting of any ballot submitted after the Voting Deadline shall be subject to Court approval if challenged by any party in interest in the cases;

- Pursuant to Bankruptcy Rule 3018(a), any creditor who seeks to withdraw an acceptance or rejection of the Plan at any time, or seeks to change their vote after Voting Deadline, must seek Court approval of the same, upon a motion on notice to parties in interest;

- Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted; and

- Any Ballot cast by a person or entity that is not entitled to vote on the Plan will not be counted.

**PLEASE SUBMIT YOUR BALLOT SO THAT IT IS RECEIVED BY THE VOTING DEADLINE. Your Ballot must be submitted so that it is actually _received_ by the Balloting Agent no later than 5:00 P.M. (Prevailing Central Time), on _September 29, 2024_ (the "_Voting Deadline_").**

PLEASE NOTE THAT THE BALLOTING AGENT'S STAFF IS NOT PERMITTED TO GIVE LEGAL ADVICE. YOU SHOULD CONSULT AN ATTORNEY FOR ANY LEGAL ADVICE RELATING TO THIS BALLOT OR THE OTHER DOCUMENTS REFERENCED HEREIN.

**EXHIBIT K104**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CHAPTER 11** |
| | § | |
| **REMARKABLE HEALTHCARE OF** | § | **CASE NO. 24-40605** |
| **CARROLLTON LP, ET AL.,**[1] | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **DEBTORS.** | § | |

### JOINT SUBCHAPTER V PLAN OF REORGANIZATION FOR REMARKABLE
### HEALTHCARE OF SEGUIN LP AND REMARKABLE HEALTHCARE, LLC

Liz Boydston (SBN 24053684)　　　　Max Schlan (Admitted *Pro Hac Vice*)
Alexandria Rahn (SBN 24110246)　　　45 Rockefeller Plaza
10440 N. Central Expy., Suite 800　　 Suite 2000
Dallas, Texas 75231　　　　　　　　　New York, New York 10111
Telephone: (469) 935-6699　　　　　　Telephone: (646) 825-2330
Facsimile: (469) 895-4413　　　　　　 Facsimile: (646) 825-2330
lboydston@gutnicki.com　　　　　　　mschlan@gutnicki.com
arahn@gutnicki.com

COUNSEL TO THE DEBTORS AND
DEBTORS IN POSSESSION

Dated: August 19, 2024

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

# TABLE OF CONTENTS

I.   PLAN AND CONFIRMATION REQUIREMENTS ........................................................... 4

    A.   BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR .......................................... 4
    B.   RELATIONSHIP WITH LANDLORD ................................................................................... 4
    C.   RELATIONSHIP WITH ALLEON CAPITAL PARTNERS, LLC ................................................. 5
    D.   THE QIPP PARTNERSHIP WITH WEST WHARTON COUNTY HOSPITAL DISTRICT ............... 7
    E.   HISTORY OF THESE CASES ........................................................................................... 8
    F.   THIS PLAN MEETS THE "BEST INTEREST OF CREDITORS" TEST AND IS "FAIR AND EQUITABLE" ......... 8
    G.   THE DEBTORS WILL BE ABLE TO MAKE ALL DISTRIBUTIONS CONTEMPLATED UNDER THIS PLAN .... 9

II.   DEFINITIONS AND CONSTRUCTION OF TERMS .................................................... 9

    A.   DEFINITIONS ............................................................................................................... 9
    B.   INTERPRETATION, APPLICATION OF DEFINITIONS, AND RULES OF CONSTRUCTION ........... 17

III.   UNCLASSIFIED CLAIMS ........................................................................................... 17

    A.   TREATMENT OF ADMINISTRATIVE CLAIMS .................................................................. 18
    B.   TREATMENT OF PROFESSIONAL FEE CLAIMS ............................................................... 18
    C.   PRIORITY TAX CLAIMS .............................................................................................. 18

IV.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............... 18

    A.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................................... 19
        (1)   Class 1 – Secured Claims ................................................................................ 19
        (2)   Class 2 – Priority Unsecured Claims ............................................................... 19
        (3)   Class 3 – General Unsecured Claims ............................................................... 20
        (4)   Class 4 – Interests in the Debtors .................................................................... 20

V.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................................... 21

    A.   ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 21
    B.   CURE OF DEFAULTS .................................................................................................. 21
    C.   REJECTION CLAIMS ................................................................................................... 22
    D.   RESERVATION OF RIGHTS .......................................................................................... 22

VI.   DISTRIBUTIONS .......................................................................................................... 23

    A.   REORGANIZED DEBTORS TO MAKE DISTRIBUTIONS ..................................................... 23
    B.   METHOD OF PAYMENT .............................................................................................. 23
    C.   OBJECTIONS TO AND RESOLUTION OF CLAIMS ........................................................... 23
    D.   CLAIMS OBJECTION DEADLINE .................................................................................. 23
    E.   DISPUTED CLAIMS .................................................................................................... 23
    F.   DELIVERY OF DISTRIBUTIONS ................................................................................... 24
    G.   UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS ...................................................... 24
    H.   SETOFF AND RECOUPMENT ....................................................................................... 24
    I.   NO INTEREST ........................................................................................................... 24

VII.   MEANS OF IMPLEMENTATION ............................................................................... 24

    A.   GENERAL SETTLEMENT OF CLAIMS ........................................................................... 24
    B.   PLAN FUNDING ........................................................................................................ 25
    C.   CONTINUED CORPORATE OPERATIONS ....................................................................... 25
    D.   CONTINUED CORPORATE EXISTENCE .......................................................................... 25
    E.   VESTING OF ASSETS .................................................................................................. 25
    F.   CORPORATE GOVERNANCE ........................................................................................ 26
    G.   CLAIMS OBJECTIONS ................................................................................................ 26
    H.   SECTION 1145 EXEMPTION ....................................................................................... 26

EXHIBIT K104 - Page 2

**VIII.  EFFECT OF PLAN CONFIRMATION** ................................................................... 26

    A.    BINDING EFFECT ................................................................................................26
    B.    PLAN INJUNCTION ............................................................................................26
    C.    PROTECTED PARTY INJUNCTION ......................................................................27
    D.    EXCULPATION ..................................................................................................27
    E.    RELEASES BY THE DEBTORS ............................................................................28
    F.    RELEASE AND EXCULPATION INJUNCTION ......................................................29
    G.    DISCHARGE OF CLAIMS ...................................................................................29
        (1)    *Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)* ...............*29*
        (2)    *Cramdown Plan - Discharge Under Bankruptcy Code section 1192*........................*30*
    H.    RETENTION, RESERVATION, AND PROSECUTION OF CAUSES OF ACTION ............30
    I.    RELEASE OF LIENS ...........................................................................................31
    J.    LIABILITIES TO, AND RIGHTS OF, GOVERNMENTAL ENTITIES ...........................31

**IX.  CONDITIONS PRECEDENT TO EFFECTIVE DATE** ................................... 32

    A.    CONDITIONS PRECEDENT TO EFFECTIVE DATE ...............................................32
    B.    WAIVER OF CONDITIONS PRECEDENT ..............................................................33
    C.    EFFECT OF NONOCCURRENCE OF CONDITIONS ................................................33

**X.  RETENTION OF JURISDICTION** ..................................................................... 33

**XI.  MISCELLANEOUS PROVISIONS** ..................................................................... 35

    A.    AMENDMENT OR MODIFICATION OF THIS PLAN ..............................................35
    B.    PLAN SUPPLEMENT ..........................................................................................35
    C.    ADDITIONAL DOCUMENTS ...............................................................................35
    D.    GOVERNING LAW .............................................................................................36
    E.    TIME ................................................................................................................36
    F.    SEVERABILITY .................................................................................................36
    G.    REVOCATION ...................................................................................................36
    H.    RESERVATION OF RIGHTS ................................................................................36
    I.    SUCCESSORS AND ASSIGNS ..............................................................................36
    J.    SERVICE OF DOCUMENTS .................................................................................37
    K.    ENTIRE AGREEMENT ........................................................................................37
    L.    INCONSISTENCY ...............................................................................................38
    M.    VOTES SOLICITED IN GOOD FAITH ..................................................................38
    N.    DEFAULT ..........................................................................................................38
    O.    POST-CONFIRMATION DISTRIBUTION REPORTS ..............................................38

**EXHIBIT A** ................................................................................................................ 39

**EXHIBIT B** ................................................................................................................ 40

**EXHIBIT K104 - Page 3**

## I.   PLAN AND CONFIRMATION REQUIREMENTS

To confirm a plan under Bankruptcy Code section 1191, whether this Plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "Best Interest of Creditors" test set forth under Bankruptcy Code section 1129(a)(7). *See* 11 U.S.C. § 1191. Thus, this Plan must provide Holders of Allowed Claims with more than they would receive if the Debtors' filed for relief under Chapter 7 of the Bankruptcy Code. Additionally, this Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtors will be, or are reasonably likely to be, able to make the Distributions as contemplated by this Plan. Additionally, this Plan must include: (a) a brief history of the Debtors' business operations; (b) the Debtors' liquidation analysis; and (c) projections with respect to the Debtors' ability to make the Distributions provided for under this Plan. *See* 11 U.S.C. § 1190(1).

The Debtors submit that this Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and, as set forth more fully below, (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will receive more than they would in a hypothetical chapter 7 liquidation; (ii) is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) is feasible as the Debtors will be able to make the Distributions contemplated under this Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

### A.   BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

The Remarkable Healthcare Debtors, including Remarkable Healthcare of Seguin LP ("RH Seguin") and Remarkable Healthcare, LLC ("RH LLC") (collectively "Remarkable") were formed in Texas from 2010 to 2013 to operate four (4) skilled nursing facilities in Texas with approximately 270 resident patients. The facilities are located in Carrollton, Dallas, Fort Worth, and Seguin. As of March 20, 2024 (the "Petition Date"), the Debtors employed approximately 490 employees who work in the field and provide general business functions, both on a full and part-time basis, in various capacities to keep the Debtors' business operating successfully and efficiently. Remarkable is focused on the individual who needs healthcare services after their hospital stay and offers both services to help individuals return home as well as long-term services for those who require extended care. Stabilizing the patient from a clinical, nursing, and social aspect is Remarkable's top priority.

### B.   RELATIONSHIP WITH LANDLORD

Debtors Remarkable Healthcare of Seguin ("RH Seguin"), Remarkable Healthcare of Fort Worth, LP ("RH Fort Worth"), Remarkable Healthcare of Dallas, LP ("RH Dallas"), and Remarkable Healthcare of Carrollton, LP ("RH Carrollton") separately entered into four (4) different leases with four (4) different landlords on four (4) different dates.

First, the Lease Agreement and Security Agreement by and between Guadalupe NH Development, Ltd and LBJM, L.L.C., dated July 8, 2010, was entered to lease the property with the common street address 1339 Eastwood Drive, Seguin, Guadalupe County, Texas 78155 (the "Original Seguin Lease"). The Original Seguin Lease was then assigned via an Assignment of

4

Lease Agreement and Security Agreement, dated July 8, 2010, by and between LBJM, LLC (as the Assignor) and Remarkable Healthcare of Seguin, LP (as the Assignee).

Second, the Lease Agreement and Security Agreement by and between WAG Development, Ltd. and Remarkable Healthcare of Fort Worth, LP, dated December 13, 2010, was entered to lease the property with the common address of 6649 North Riverside Drive, Fort Worth, Tarrant County, Texas 76137 (the "Original Fort Worth Lease").

Third, the Lease Agreement and Security Agreement by and between GMP Dallas NH, Ltd. and Remarkable Healthcare of Dallas, LP, dated March 9, 2012, was entered to lease the property with the common address of 3350 Bonnie View Road, Dallas County, Texas 75216 (the "Original Dallas Lease").

Fourth, the Lease Agreement and Security Agreement by and between Mustang NH, LLC[2] and Remarkable Healthcare of Carrollton, LP, dated March 13, 2013, was entered to lease the property with the common address of 4501 Plano Parkway, Carrollton, Denton County, Texas 75010 (the "Original Carrollton Lease").

On or about February 12, 2028, Debtors filed voluntary petitions for relief under Chapter 11 of the Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), jointly administered under case number 18-40295 (the "2018 Bankruptcy Cases"). In the 2018 Bankruptcy Cases, the Court confirmed Debtors' plan on May 16, 2019, and the cases were closed on April 4, 2020.

In the 2018 Bankruptcy Cases, the confirmed plan included an agreement in the form of a Promissory Note executed May 10, 2019 to cure (the "Cure Note") the above four leases. On November 21, 2022, the Former Landlords assigned the Leases respectively to KRS Seguin, KRS Fort Worth LLC, KRS Dallas LLC, and KRS Carrollton LLC (the "KRS Landlords"). However, the Former Landlords retained the Cure Note. Counsel for the KRS Landlords in these Cases is also counsel for the Former Landlords and has filed proof of claim No. 14 in these Cases for $995,867.80[3] on behalf of the Former Landlords.

### C. RELATIONSHIP WITH ALLEON CAPITAL PARTNERS, LLC

On or about June 7, 2019, Debtors entered into a Loan and Security Agreement (the "Loan Agreement") with Alleon Capital Partners, LLC ("Alleon" or the "Secured Lender"), which provided that Alleon would extend credit to Debtors to finance Debtors' business operations. Also, on or about June 7, 2019, Remarkable Healthcare, LLC, Remarkable Investments, LP, LBJM, LLC, Remarkable Duo, LLC, Remarkable Partners of Fort Worth, LP, Remarkable Partners, LP, Remarkable Partners of Dallas, LP, and Remarkable Rehabilitation, LP, along with Laurie Beth

---

[2] Mustang NH, LLC; GMP Dallas NH, LLC; WAG Development, Ltd.; and Guadalupe NH Development, Ltd. hereinafter collectively referred to as the "**Former Landlords**."

[3] It should be noted that paragraph 33 of the KRS Landlords' Motion states the original principal amount of the Cure Note was $1,520,776.58, and paragraph 34 states that the outstanding balance on the Cure Note as of the Petition Date is $995,867.80, but then states in paragraphs 36 and 37: "36. Neither RH-S nor any other of the operating Debtors has ever made any payments on the Cure Note. 37. The full balance of the Cure Note remains due and owing." These statements blatantly contradict the fact that the Cure Note principal amount was $1,520,776.58.

5

**EXHIBIT K104 - Page 5**

McPike and Jon McPike (collectively, the "Guarantors"), executed certain Guaranty and Security Agreement ("Guarantees," and together with the Loan Agreement and all documents executed in connection therewith, the "Security Documents"), pursuant to which Guarantors guaranteed payment and performance of all present and future obligations of the Debtors to Alleon. Additionally, the Debtors granted Alleon a security interest in all of the Debtors' present and future accounts, chattel paper, goods (including inventory and equipment), instruments, investment property, documents, and general intangibles, letter of credit rights, commercial tort claims, deposit accounts, the billing reserve cash collateral, and the proceeds thereof (the "Cash Collateral" or "Collateral").

In the 2018 Bankruptcy Cases, Alleon provided new financing to Debtors for the Debtors' plan of reorganization. The liens and UCC-1 Financing Statements of Comerica Bank were assigned to Alleon as security for the new financing. Under the terms of the Security Documents, Alleon would make advances to Debtors so long as, before and after such advance, the unpaid balance of all cash obligations under the Loan Agreement (the "Loan Balance") did not exceed the allowable amount as defined in the Loan Agreement (the "Borrowing Base"). Debtors were required to pay Alleon, on demand, if the Loan Balance exceeded the allowable amount (an "Over Advance Amount").

Pursuant to the Loan Agreements, Debtors, Regions Bank, and Alleon also entered into certain Deposit Account Control Agreements ("DACAs"). Pursuant to the DACAs, the Debtors authorized, and Regions Bank was required to complete, a daily sweep of all funds in the Debtors' deposit accounts to be paid to Alleon.

In December of 2022, Alleon changed the way they calculate the Borrowing Base. Rather than the formula in the original Loan Agreement which based the Borrowing Base on accounts receivables, the new formula now involved a three-month average of collections over a thirty-day period. In January of 2023, the Debtors signed an amendment to the Loan Agreement, which was a renewal of the original term of the Loan Agreement (the "Second Amendment"). The Second Amendment also altered the "Maximum Amount" for the Borrowing Base, reducing it from $5,000,000 to $3,000,000. These two changes ultimately reduced the Debtors' Borrowing Base from over $4.2 million to $1.9 million. And, on top of that, the Debtors already had more than $1.9 million drawn down on the line at the time of this change, but Alleon made a concession that it would not default on the Debtors.

Shortly thereafter, the Second Amendment was changed to a Third Amendment dated February 7, 2023 (the "Third Amendment"). The Third Amendment imposed an increased interest to default rate, even though the Debtors' cash flow had temporarily decreased due to industry-specific reasons and despite Alleon having agreed not to default the Debtors. As a result, Alleon created a pull-on cash from the Debtors, cash that the Debtors needed to keep operations cash flowing.

During the second quarter of 2023, the Debtors needed to draw down on additional funds on its line of credit because census levels and revenues had not yet returned to pre-COVID levels. But the Debtors could not because any excess line of credit no longer existed. Alleon, however, agreed to extend up to a limit but imposed egregious penalties in exchange, and the Debtors had no other options but to accept those penalties. Alleon refused to return collected cash to the Debtors

6

for operation. By withholding cash collections, Alleon was able to force the Debtors to sign the amended agreements that provided for higher fees and higher interest due to Alleon's forced default.

On or about May 23, 2023, Alleon and the Debtors entered into a Forbearance Agreement and Fourth Amendment to the Loan Agreement (the "Forbearance Agreement"). The Forbearance Agreement imposed weekly fees in excess of $35,000.00 even though Alleon knew that the Debtors were not in a position to pay such high fees. Nevertheless, the Debtors managed to sustain their operations for a few months because of the ERC tax credits received from the federal government, which were used to fund payroll and patient care needs.

To add to the Debtors' expenses, the census had increased by 23% since the end of 2022, but the Debtors would not see this increase in revenue from the increased census for a few months because the Medicare Advantage Plans and State Medicaid payments were increasingly delayed due to no government oversight and new federal Medicaid laws related to annual patient eligibility renewals. At the same time, the increase in the census led immediately to the Debtors having additional expenses due to take of the newly admitted patients.

Ultimately, Debtors were forced to file for subchapter V of chapter 11 in November of 2023. The Debtors, however, based on advice from prior counsel and misleading characterizations by Alleon and the Landlord that they would work with the Debtors if they dismissed their cases, voluntarily agreed to dismiss the case in February of 2023. Shortly, thereafter, it became clear that Alleon would not follow through on its word to accept $10,000 per week from the Debtors and, on top of that, beginning on or about 8:00 a.m. March 1, 2024, Alleon swept every single dollar the Debtors received each day and refused to fund, advance, or return the Debtors' money. Between March 1, 2024 and March 20, 2024, Alleon swept $951,860.43.

### D. THE QIPP PARTNERSHIP WITH WEST WHARTON COUNTY HOSPITAL DISTRICT

In late 2023, while in bankruptcy, the Debtors started working toward entering into the Quality Incentive Payment Program for Nursing Homes ("QIPP") through an arrangement with West Wharton County Hospital District ("WWCHD"). The QIPP would allow the Debtors to net additional revenues starting in the fourth quarter of 2024. On March 1, 2024, the Debtors executed three agreements for each of the four debtors RH Fort Worth, RH Carrollton, RH Dallas, and RH Seguin. In addition to a Sublease, WWCHD and each Debtor entered into a Management Agreement Dated as of March 1, 2024 (the "Management Agreement"), and an Operations Transfer Agreement between Remarkable Healthcare, LLC and WWCHD.

Entering the QIPP program required the Debtors to execute change of ownership ("CHOW") documents to transfer their Medicare Identification Number and provider agreements to WWCHD. The CHOW process put a hold on not only the Debtors' ability to bill Medicaid (which accounts for the majority of their patients) for the entire time from March 1, 2024 until the CHOW is complete, (the "CHOW Hold"), but the CHOW Hold has also held up certain Medicare payments as well. For RH Seguin, the CHOW Hold has held up approximately $281,062.80 in prepetition accounts receivables and approximately $1.455 million in post-petition accounts

7

receivables that will continue to accrue.[4] Once the CHOW Hold was released, the Debtors believed they would begin to see a substantial influx of collections on their pre- and post-petition accounts receivables. Nevertheless, even with the CHOW being finalized, the Debtors encountered some billing issues related to CMS and the new provider number further holding up the expected influx of accounts receivables. With the post-petition billings able to resume and the return of full collections, the Debtors should not have a problem paying rent and other expenses as well as their creditors through this Plan.

### E. HISTORY OF THESE CASES

On March 20, 2024 (the "Petition Date"), the Debtors commenced these Cases by filing voluntary petitions for relief under subchapter V of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. On March 26, 204, Mark Weisbart was appointed Subchapter V Trustee in these Cases. No other trustee or committee has been appointed. On April 19, 2024, the Debtor RH Fort Worth rejected the Fort Worth lease, and on April 26, 2024, it ceased operations, and the last resident was relocated. On May 13, 2024, the operations for Debtors RH Carrollton and RH Dallas were transitioned to new management pursuant to the terms of the Amended Show Cause Order entered on May 10, 2024, and as amended on May 14, 2024 (RH Dallas, RH Carrollton, and RH Fort Worth collectively, the "DFW Debtors").

Debtors RH Seguin and Debtor RH LLC continue to manage and operate their businesses and property as debtors in possession pursuant to Bankruptcy Code sections 1107, 1108, and 1184.

This Subchapter V Plan will apply to Debtors, RH Seguin and RH LLC (the "Reorganized Debtors"). Contemporaneously herewith, the Debtors filed an additional Subchapter V Plan that is applicable to the DFW Debtors and provides for the DFW Debtors' liquidation. This Subchapter V Plan provides for the reorganization of the RH Seguin and RH LLC through the full implementation of the QIPP Program and the rejection of certain unfavorable executory contracts.

### F. THIS PLAN MEETS THE "BEST INTEREST OF CREDITORS" TEST AND IS "FAIR AND EQUITABLE"

In accordance with Bankruptcy Code section 1191(c), this Plan provides that all Distributions will be funded with the Debtors' projected Disposable Income over the Commitment Period. The Debtors' total projected Disposable Income for the Commitment Period is $1,764,677. Attached hereto as Exhibit A is the Debtors' projected Disposable Income analysis. Additionally, the Debtor's Liquidation Analysis, attached hereto as Exhibit B demonstrates that this Plan is in the best interests of creditors.

Accordingly, this Plan complies with the "best interest of creditors" test and is "fair and equitable" because it proposes to provide total Distributions to Holders of Allowed Claims that

---

[4] These accounts receivable reflect through July 2024. As of the filing of this Plan, the CHOW Hold is still in effect. Moreover, due to the Debtors' accounting software, post-petition accounts receivables are calculated as of April 1, 2024. Because the Petition Date falls 11 days before then, post-petition and additional accounts receivable have accumulated since July; accounts receivable subject to the CHOW Hold are certainly higher than the calculation set forth herein.

EXHIBIT K104 - Page 8

exceed the Liquidation Value and are not less than the Debtors' projected Disposable Income for the Commitment Period.

### G. THE DEBTORS WILL BE ABLE TO MAKE ALL DISTRIBUTIONS CONTEMPLATED UNDER THIS PLAN

In accordance with Bankruptcy Code sections 1191(c)(3)(A)(i) and (ii), this Plan demonstrates that the Debtors have sufficient Cash and will have sufficient future earnings to provide regular, annual Pro Rata Share Distributions to Holders of Allowed General Unsecured Claims over the Commitment Period.

## II.   DEFINITIONS AND CONSTRUCTION OF TERMS

### A. DEFINITIONS

"*Remarkable*" or "*Remarkable Healthcare*" means Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*Administrative Claim*" means any Claim against any Debtor for costs and expenses of administration of the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) and all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5).

"*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, with the exception of Professional Fee Claims, which shall be the first Business Day that is 30 days after the Effective Date.

"*Affiliate*" means an "affiliate," as defined in Bankruptcy Code section 101(2).

"*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under this Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not Contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to this Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by this Plan (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. Unless otherwise specified in this Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or

9

Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; (3) any fine, penalty or forfeiture; or (4) any attorneys' fees and expenses. Any Claim or Interest that has been or is hereafter listed in the Schedules as Contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Bankruptcy Code section 502(d) shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest.

"*Avoidance Actions*" means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, having jurisdiction over the Subchapter V Cases or, if the Bankruptcy Court ceases to exercise jurisdiction over the Subchapter V Cases, such court or adjunct thereof that exercises jurisdiction over the Subchapter V Cases in lieu of the United States Bankruptcy Court for the Northern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"*Bar Date(s)*" means the Claims Bar Date, the Governmental Bar Date, or the Rejection Damages Bar Date, as applicable; and "Bar Dates" means a collective reference to the Claims Bar Date, the Governmental Bar Date, and the Rejection Damages Bar Date.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case now owned or hereafter acquired by the Debtors and/or their Estates, and in each case, whether known or unknown, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party

10

action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Subchapter V Cases, including through the Effective Date.

"*Claim*" means a "claim," as that term is defined in Bankruptcy Code section 101(5), against any Debtor.

"*Claims Bar Date*" means the date for filing Proofs of Claim, May 29, 2024.

"*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, and (b) such other date as may be specifically fixed by order of the Bankruptcy Court.

"*Claims Register*" means the official register of Claims.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

"*Collateral*" means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

"*Commitment Period*" means the 3-year period contemplated and set forth under Bankruptcy Code section 1191(c).

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under Bankruptcy Code section 1128 at which the Debtors seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

"*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

"*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Consummation*" means the occurrence of the Effective Date.

"*Contingent*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, any contingent or unliquidated Claim asserted or which may be asserted against the Debtors.

11

"*Cure Notice*" means a notice sent to counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under this Plan pursuant to Bankruptcy Code section 365, which shall include: (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes; provided that the Schedule of Assumed Executory Contracts and Unexpired Leases and any amended Schedule of Assumed Executory Contracts and Unexpired Leases may each constitute a "Cure Notice" hereunder.

"*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against a Debtor based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

"*Debtor Release*" has the meaning ascribed to such term in Article VIII.E.

"*Debtor Releasing Parties*" has the meaning ascribed to such term in Article VIII.E.

"*Debtors*" means, collectively, Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*DFW Debtors*" means, collectively, Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth, LP.

"*DFW Facilities*" means the three (3) Facilities that will not be operated by the Reorganized Debtors located at the following common street addresses: (i) 3350 Bonnie View Road, Dallas, Texas 75216; (ii) 6649 North Riverside Drive, Fort Worth, Texas 76137; and (iii) 4501 Plano Parkway, Carrollton, Texas 75010.

"*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, a Claim or Interest, or any portion thereof. that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as Contingent, Disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disposable Income*" means Debtors' "disposable income" as defined under Bankruptcy Code section 1191(d).

"*Disputed*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest, or any portion thereof, that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection Filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, (d) any Claim or Interest evidenced by a Proof of Claim which amends a Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

12

"*Distribution*" means Cash, property, interests in property, or other value distributed by the Reorganized Debtors to Holders of Allowed Claims, or their designated agents, under this Plan.

"*Effective Date*" means the date which is the first Business Day on which the conditions set forth in Article IX.B have been satisfied or waived.

"*Entity*" shall have the meaning set forth in Bankruptcy Code section 101(15).

"*Estate*" means the estate of any Debtor created under Bankruptcy Code sections 301 and 541 upon commencement of the applicable Debtor's Subchapter V Cases.

"*Exculpated Parties*" means collectively, and in each case in their capacity as such during the Subchapter V Cases the Debtors and Reorganized Debtors and each of their directors, officers, attorneys, investment bankers, accounts, consultants, and other Professionals.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Facilities Leases*" means the Unexpired Leases and all related documents with respect to the Facilities, including but not limited to, as applicable, master leases, subleases, and guarantees.

"*Facilities*" means the Facilities owned by the Landlord and previously or currently operated by the Debtors.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Subchapter V Cases.

"*Final Decree*" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Subchapter V Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Subchapter V Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

"*General Unsecured Claim*" means any Unsecured Claim.

"*Governmental Bar Date*" means the date for Governmental Units to file Proofs of Claim, September 16, 2024.

"*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"*Gutnicki*" means Gutnicki LLP.

"*Holder*" means the beneficial holder of any Claim or Interest.

"*Impaired*" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"*Interest*" means any "equity security" in a Debtor, as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"*KRS*" or "*Landlord*" means KRS Carrollton, LLC, KRS Dallas, LLS, KRS Fort Worth, LLC, KRS Seguin, LLC, Kilgore Property Management, LLC, and applicable affiliates.

"*Lien*" means "lien," as defined in Bankruptcy Code section 101(37).

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Texas, or any other court having jurisdiction over the Subchapter V Cases.

"*Petition Date*" means March 20, 2024, the date on which the Debtors commenced the Subchapter V Cases as applicable to each particular Debtor.

"*Plan*" means this *Subchapter V Plan of Reorganization for Remarkable Healthcare of Seguin, LLP and Remarkable Healthcare, LLC*, dated as of August 19, 2024, including all exhibits, supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Documents*" means this Plan, this Plan Supplement, and all the exhibits and schedules attached to each of the foregoing.

"*Plan Proponents*" means the Debtors.

"*Plan Supplement*" means the supplemental documents, schedules, and exhibits to this Plan to be Filed by the Debtors containing substantially final forms of, among other things, the Schedule of Rejected Executory Contracts and Unexpired Leases. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, this Plan Supplement through the Effective Date.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

"*Priority Unsecured Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

EXHIBIT K104 - Page 14

"*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under this Plan.

"*Professional Fee Claim*" means any Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

"*Professional Fee Claims Bar Date*" means the first business day which is 45 days after the Effective Date.

"*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered before or on the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331.

"*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Subchapter V Cases.

"*Protected Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' Professionals: Gutnicki, LLP and Omni; and (c) the individual members of the Debtors' management.

"*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

"*Rejected Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to this Plan, Filed as part of this Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date.

"*Rejection Claims*" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by any of the Debtors, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"*Rejection Damages Bar Date*" means the date by which Rejection Claims must be Filed, 30 days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.

"*Related Parties*" means, with respect to any Person, such Person's current and former Affiliates, partners, subsidiaries, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other

15

Professionals, together with their respective successors and assigns, in each case in their capacity as such.

"*Released Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors and the Reorganized Debtors; (b) the Debtors' Professionals: Gutnicki, LLP and Omni; and (c) the individual members of the Debtors' management.

"*Releasing Parties*" shall mean the Debtor Releasing Parties.

"*Reorganized Debtors*" means the Debtors and any successor thereto after the Effective Date.

"*Remarkable*" means Remarkable Healthcare of Seguin, LP and Remarkable Healthcare, LLC.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such Schedules may be amended, modified, or supplemented from time to time.

"*Secured Claim*" means any Claim against any Debtor: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to this Plan.

"*Seguin Lease*" means the Lease Agreement and Security Agreement By and Between Guadalupe NH Development, Ltd. And LBJM, L.LC. Dated July 8, 2010 for the premises with the common street address of 1339 Eastwood Drive, Seguin, Guadalupe County, Texas 78155. This lease was assigned on November 21, 2022 from the former landlord, Guadalupe NH Development, Ltd. to the current Landlord KRS Seguin.

"*Subchapter V Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court being jointly administered under Case No. 24-40605.

"*Subchapter V Trustee*" means Mark Weisbart.

"*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

16

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is "unimpaired" within the meaning of Bankruptcy Code section 1124.

"*Unsecured Claim*" means any Claim  other than Administrative Claims, Secured Claims, and Priority Unsecured Claims.

"*West Wharton*" or "*WWCHD*" means West Wharton County Hospital District.

### B.  INTERPRETATION, APPLICATION OF DEFINITIONS, AND RULES OF CONSTRUCTION

The following rules of construction, interpretation, and application shall apply:

**(1)**     Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

**(2)**     Unless otherwise specified, each section, article, schedule, or exhibit reference in this Plan is to the respective section in, article of, schedule to, or exhibit to this Plan.

**(3)**     The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

**(4)**     The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of this Plan.

**(5)**     A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

**(6)**     The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.

**(7)**     Unless otherwise provided, any reference in this Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

**(8)**     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### III.    UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes and Interests set forth in Article III of this Plan.

**EXHIBIT K104 - Page 17**

### A. TREATMENT OF ADMINISTRATIVE CLAIMS

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a less favorable treatment with the Debtors or Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Administrative Claim, regular payments in Cash, throughout the Commitment Period, totaling not less than the full unpaid amount of such Allowed Administrative Claim.

All requests for payment of Administrative Claims must be Filed and served on the Debtors or Reorganized Debtors, as applicable, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Objections to such requests, if any, must be Filed and served on the Debtors or Reorganized Debtors, as applicable, and the requesting party no later than 15 days after the earlier of (i) the Administrative Claims Bar Date or (ii) the date such request for payment of an Administrative Claim is filed. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

### B. TREATMENT OF PROFESSIONAL FEE CLAIMS

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. All such final requires will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules. Unless otherwise agreed to, once approved by the Bankruptcy Court, Allowed Professional Fee Claims shall be paid with an amount of Cash equal to the full unpaid amount of the Allowed Professional Fee Claim (1) on or promptly thereafter the Effective Date or (2) the first Business Day after the date that is 30 calendar days after the date on which a Professional Fee Claim becomes an Allowed Professional Fee Claim.

### C. PRIORITY TAX CLAIMS

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the full unpaid amount of such Allowed Tax Claim on (1) the Effective Date, (2) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable.

## IV.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Pursuant to Bankruptcy Code sections 1122, 1123, and 1190, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a

18

**EXHIBIT K104 - Page 18**

particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan is premised upon the substantive consolidation of the Debtors solely for the purposes of voting, determining which Classes have accepted this Plan, confirming this Plan, and the resultant treatment of Claims and Interests and Distributions under this Plan.

This Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|-------|-------------------|--------|---------------|--------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote | TBD |
| 4 | Equity Interests | Unimpaired | Deemed to Accept | 100% |

### A. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Except to the extent that the Debtors or the Reorganized Debtors, as applicable, and a Holder of an Allowed Claim or Allowed Interest, as applicable, agree in writing to less favorable treatment for such Allowed Claim or Allowed Interest, as applicable, such Holder shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

#### (1)     Class 1 – Secured Claims

*Classification*. Class 1 consists of all Secured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Secured Claim and the Debtors or the Reorganized Debtors, as applicable agree in writing to less favorable treatment of its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Secured Claim: (i) payment in full, in Cash, of the unpaid portion of its Allowed Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes Allowed; (ii) delivery of the Collateral securing such Allowed Secured Claim; (iii) Reinstatement of the Secured Claim; or (iv) such other treatment as the Debtors or Reorganized Debtors, as applicable and the Holder of such Allowed Secured Claim may agree.

*Voting*. Class 1 is Unimpaired. Holders of Allowed Secured Claims in Class 1 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Secured Claims are not entitled to vote to accept or reject this Plan.

#### (2)     Class 2 – Priority Unsecured Claims

*Classification*. Class 2 consists of all Priority Unsecured Claims.

19

**EXHIBIT K104 - Page 19**

*Treatment*. Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim: (i) payment in full, in Cash, on the later of the Effective Date and the date on which such Priority Unsecured Claim becomes Allowed; (ii) payment in the ordinary course of business between the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or (iii) such other treatment as the Debtors or Reorganized Debtors, as applicable and the Holder of such Allowed Priority Unsecured may agree.

*Voting*. Class 2 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 2 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject this Plan.

### (3)    Class 3 – General Unsecured Claims

*Classification*. Class 3 consists of all General Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed General Unsecured Claim, its Pro Rata share of Debtors' projected Disposable Income (as set forth under Exhibit A to this Plan). In accordance therewith, Debtors will make Distributions on account of Allowed General Unsecured Claims as follows:

- On an annual basis beginning in the second year after this Plan goes effective, after satisfaction in full of all Allowed Secured Claims, Administrative Expense Claims, Professional Fee Claims, and Priority Unsecured Claims, the Debtors shall make Distributions of all available disposable income to all Holders of Allowed Unsecured Claims on a Pro Rata basis.

*Voting*. Class 3 is Impaired. Holders of Allowed General Unsecured Claims in Class 3 are entitled to vote to accept or reject this Plan.

### (4)    Class 4 – Interests in the Debtors

*Classification*. Class 4 consists of all Interests in the Debtors.

*Treatment*. Holders of Interests in Debtors shall retain such Interests. Holders of Interests in the Debtors shall not receive any Distribution under this Plan on account of such Interests.

*Voting*. Class 4 is UnimpairedHolders of Allowed Interests in Class 4 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Interests are not entitled to vote to accept or reject this Plan.

20

## V.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Schedule of Rejected Executory Contracts and Unexpired Leases will be deemed assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to Bankruptcy Code sections 365 and 1123. The Debtors reserve the right to reject any executory contrary or Unexpired Lease until the Confirmation Date.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of the Subchapter V Cases or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to this Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by this Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases will be deemed to have been rejected. The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the assumptions as of the Effective Date. All rejections of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date, unless such Executory Contract or Unexpired Lease (i) previously has been assumed or rejected by the appliable Debtor; (ii) expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date; (iv) is identified in this Plan Supplement as an Executory Contract or Unexpired Lease to be assumed; (v) is an insurance policy; or (vi) is otherwise indicated in this Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan.

### B.  CURE OF DEFAULTS

EXHIBIT K104 - Page 21

Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash by the Debtors on the Effective Date or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure payments, (b) any other matter pertaining to assumption, the Cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the Executory Contract or Unexpired Lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. The Debtors reserve the right to reject any Executory Contract or Unexpired Lease not later than 30 days after the entry of a Final Order resolving any such dispute.

At least 14 days before the Confirmation Hearing, the Debtors will provide for notices of proposed assumption and proposed Cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any counterparty's objection to the proposed assumption of an Executory Contract or Unexpired Lease; related Cure amount; or adequate assurance must be Filed, served, and actually received by the Debtors at least seven days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have consented to such assumption or proposed Cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## C. REJECTION CLAIMS

Any counterparty to a contract or lease which is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or is otherwise rejected by the Debtors must File and serve a Proof of Claim on the applicable Debtor that is party to the contract or lease to be rejected no later than the Rejection Damages Bar Date.

## D. RESERVATION OF RIGHTS

Neither the exclusion nor inclusion of any contract or lease in this Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors have

22

any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

## VI.    DISTRIBUTIONS

### A.    REORGANIZED DEBTORS TO MAKE DISTRIBUTIONS

Unless ordered otherwise in the Confirmation Order, the Reorganized Debtors shall make all Distributions required by this Plan.

### B.    METHOD OF PAYMENT

Unless otherwise expressly agreed in writing, payments of Cash under this Plan shall be made by a check drawn on a domestic bank, ACH transfer, or an electronic wire. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

### C.    OBJECTIONS TO AND RESOLUTION OF CLAIMS

The Reorganized Debtors shall have the right to File objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; *provided, however*, that only the Reorganized Debtors have the authority to compromise, settle, otherwise resolve, or withdraw any objections without approval of the Bankruptcy Court.

### D.    CLAIMS OBJECTION DEADLINE

The Debtors or the Reorganized Debtors, as applicable, shall have the right to object to all Claims. The Claims Objection Deadline shall be 60 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Reorganized Debtors.

### E.    DISPUTED CLAIMS

Notwithstanding any other provision of this Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan.

On any date that Distributions are to be made under the terms of this Plan, the Reorganized Debtors shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. The Reorganized Debtors shall also segregate any interest, dividends, or proceeds of such Cash. Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

EXHIBIT K104 - Page 23

Except as otherwise provided herein, within the later of (i) seven (7) Days after a Claim becomes an Allowed Claim and (ii) 30 Days after the expiration of the Claims Objection Deadline, the Debtors shall distribute all Cash or other property, including any interest, dividends, or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

### F. DELIVERY OF DISTRIBUTIONS

Except as provided herein, Distributions to Holders of Allowed Claims shall be made:

(i) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors or Reorganized Debtors, as applicable, after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtors or Reorganized Debtors have not received a written notice of a change of address.

### G. UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS

If the Distribution to the Holder of any Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then current address, at which time such undelivered distribution shall be made to such Holder within 90 days of receipt of such Holder's then current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and revert to the Reorganized Debtors at the expiration of six months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in this Plan, nothing in this provision shall act as a bar to entry of a Final Decree Closing the Subchapter V Cases.

### H. SETOFF AND RECOUPMENT

From and after the Effective Date, the Reorganized Debtors may, to the extent permitted by Bankruptcy Code section 553 or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Causes of Action of any nature whatsoever that the Reorganized Debtors may have against the Holder of such Claim; *provided, however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor any other Cause of Action.

### I. NO INTEREST

Unless otherwise explicitly provided for in this Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## VII.   MEANS OF IMPLEMENTATION

### A. GENERAL SETTLEMENT OF CLAIMS

24

Unless otherwise set forth in this Plan, pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, on the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved by this Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and within the range of reasonableness.

**B.  PLAN FUNDING**

The Debtors anticipate that all Distributions made under this Plan will be funded from the Cash on hand and future earnings, which will not be less than 100% of the Debtors' projected Disposable Income for the Commitment Period. However, the Debtors reserve the right to make a lump sum payment during the Commitment Period.

**C.  CONTINUED CORPORATE OPERATIONS**

The Reorganized Debtors will continue to operate with the primary purpose of managing the operations of the skilled nursing and assisted living facility in Seguin, Texas.

**D.  CONTINUED CORPORATE EXISTENCE**

Each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of Entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date.

**E.  VESTING OF ASSETS**

Except as otherwise expressly provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated in this Plan or this Plan Supplement, pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), 1141(b) and (c), and any other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Causes of Action of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Subchapter V Cases or under or in connection with this Plan, shall automatically, without the notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule or any requirement of further action, vote or other approval or authorization of the security holders, equity owners, members, managers, officers or directors of the Debtors, the Reorganized Debtors or the other applicable Entity or by any other person (except for those expressly required pursuant hereto or by this Plan Documents), vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Liens, if any, which survive the occurrence of the Effective Date as described in this Plan. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and use, acquire, and dispose of their

25

respective property, without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

### F. CORPORATE GOVERNANCE

The Reorganized Debtors will continue to be governed by its manager. On the Effective Date, the Debtors' officers will remain officers of the Reorganized Debtors.

### G. CLAIMS OBJECTIONS

The Debtors or the Reorganized Debtors, as applicable, shall have the right to object to all Claims. The Claims Objection Deadline shall be 60 days after the Effective Date; *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Reorganized Debtors.

### H. SECTION 1145 EXEMPTION

In accordance with Bankruptcy Code section 1145, the retention of Interests under this Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## VIII. EFFECT OF PLAN CONFIRMATION

### A. BINDING EFFECT

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

### B. PLAN INJUNCTION

**Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been satisfied or released pursuant to this Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates:**

**(a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or**

26

encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to this Plan or that is otherwise inconsistent with the provisions of this Plan.

C.  PROTECTED PARTY INJUNCTION

The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on account of any Claim or Cause of Action against a Protected Party in connection with or arising out of the administration of, or otherwise related to, the Subchapter V Cases; the negotiation and pursuit of this Plan and all related agreements, instruments, and other documents; the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The other protections provided by this Section shall be in addition to, and shall not limit, any other releases, indemnifications, injunctions, exculpations, any and all other applicable law or rules protecting the Protected Parties from liability. For the avoidance of doubt, nothing in this Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units.

D.  EXCULPATION

Notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any cause of action, Claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Subchapter V Cases, the Filing of the Subchapter V Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, Plan or any other contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the issuance of securities pursuant to this Plan, or the distribution of property under this Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have, and upon completion of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and

27

distribution of consideration pursuant to, this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e). Notwithstanding anything contained herein, no exculpation shall be given in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

E.  RELEASES BY THE DEBTORS

Pursuant to Bankruptcy Code section 1123(b), and notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates (the "Debtor Releasing Parties") from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivate claim asserted on behalf of any Debtor and/or Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, the Subchapter V Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Subchapter V Cases, the negotiation, formulation, preparation, implementation or administration of this Plan, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (the "Debtor Release"). Notwithstanding anything contained herein, no release shall be given in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

28

For the avoidance of doubt, the Debtor Release shall not operate to waive, release, or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by a Final Order of the Court or any other court of competent jurisdiction; and/or (ii) the Rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Court.

### F.  RELEASE AND EXCULPATION INJUNCTION

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, fines, penalties, or liabilities released or exculpated pursuant to this Plan.

### G.  DISCHARGE OF CLAIMS

The Debtors shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; however, the timing of the discharge will depend on whether this Plan is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

#### (1)  *Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)*

If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), the Debtors shall receive a discharge pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

29

EXHIBIT K104 - Page 29

### (2) *Cramdown Plan - Discharge Under Bankruptcy Code section 1192*

If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtors shall receive a discharge "as soon as practicable after completion by the [Debtors] of all payments due within the [Commitment Period]." *See* 11 U.S.C. § 1192. Except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Unless otherwise indicated, all rejections of Executory Contracts and Unexpired Leases in this Plan will be effective Plan on account of such Claims and Interests, including any demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date and the completion of all Distributions contemplated under this Plan.

### H. RETENTION, RESERVATION, AND PROSECUTION OF CAUSES OF ACTION

In accordance with Bankruptcy Code section 1123(b) or any corresponding provision of federal or state laws, and except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, all Causes of Action shall be retained by the Debtors, and the Debtors may, in accordance with this Plan, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of such Causes of Action. The Debtors will include in this Plan Supplement a non-exhaustive list of the Causes of Action that will be retained.

Subject to the immediately preceding paragraph, any Entity to who the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Subchapter V Cases; (ii) the Debtors have objected to any such Entity's proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's schedule Claim has been identified by the Debtors as disputed, contingent, or unliquidated.

**EXHIBIT K104 - Page 30**

Except as otherwise explicitly provided in this Plan, nothing in this Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Estate may have or choose to assert on behalf of the Debtors or their Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law. No entity may rely on the absence of a specific reference in this Plan to any Cause of Action or account receivable against it as an indication that the Debtors will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action or accounts receivable upon or after the confirmation or consummation of this Plan.

Prior to, on, or after the Effective Date, as applicable, all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date, as applicable, pursuant to applicable laws, without any requirement of further vote, consent, approval, authorization, or other action by such stockholders, equity security holders, officers, directors, partners, managers, members, or other owners of the Debtors or notice to, order of, or hearing before the Bankruptcy Court.

## I. RELEASE OF LIENS

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Reorganized Debtors.

## J. LIABILITIES TO, AND RIGHTS OF, GOVERNMENTAL ENTITIES

**(1)**     As to the United States, nothing in this Plan shall limit or expand the scope of the release or injunction to which the Debtors are entitled to under the Bankruptcy Code. The release, injunction and exculpation provisions contained in this Plan are not intended and shall not be construed to bar the United States from, subsequent to entry of the Confirmation Order, pursuing any police or regulatory action, except to the extent those release and injunctive provisions bar a governmental unit from pursuing Claims.

**(2)**     Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to a governmental unit under environmental law that is not a Claim; (2) any Claim of a governmental unit arising on or after the Effective Date; (3) any valid right of set-off or recoupment of the United States against a Debtor; or (4) any liability of the Debtors under environmental law to any governmental unit as the owner or operator of property that such Debtor owns or operates after the Effective Date, except those obligations to reimburse costs expended or paid by a

31

**EXHIBIT K104 - Page 31**

governmental unit before the Effective Date or to pay penalties owing to a governmental unit for
violations of environmental laws or regulations that occurred before the Effective Date; provided
that the Debtors reserve all of their rights and defenses under applicable law with respect to any
such Claims or liabilities. Nor shall anything in this Plan: (i) enjoin or otherwise bar the United
States or any governmental unit from asserting or enforcing, outside the Bankruptcy Court, any
liability described as not discharged in the preceding sentence, provided that the Debtors and the
Liquidation Trustee reserve all of their rights and defenses under applicable law with respect to
any such Claims or Liabilities; or (ii) divest any court of jurisdiction to determine whether any
liabilities asserted by the United States or any governmental unit are discharged or otherwise
barred by this Plan or the Bankruptcy Code.

      **(3)**      Nothing in this Plan shall release or exculpate any non-Debtor, including
the Exculpated Parties, from any liability to the United States, including but not limited to any
liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws
against the Exculpated Parties, nor shall anything in this Plan enjoin the United States from
bringing any claim, suit, action or other proceeding against the Exculpated Parties for any liability
whatsoever.

## IX.    CONDITIONS PRECEDENT TO EFFECTIVE DATE

### A.  CONDITIONS PRECEDENT TO EFFECTIVE DATE

The following is a list of the conditions precedent to the Effective Date of this Plan, unless
such conditions, or any of them, have been satisfied or duly waived pursuant to Section IX.C of this
Plan:

      1.      the Confirmation Order shall have been entered by the Bankruptcy Court
confirming this Plan in form and substance acceptable to the Debtors, and
such order shall have become a Final Order that has not been stayed or
modified or vacated on appeal;

      2.      all governmental and material third-party approvals and consents, including
Bankruptcy Court approval, necessary in connection with the transactions
contemplated by this Plan shall be in full force and effect (which, in the
case of an order of judgment of any Court, shall mean a Final Order), and
all applicable waiting periods shall have expired without any action being
taken or threatened by any competent authority that would restrain, prevent
or otherwise impose materially adverse conditions on such transactions;

      3.      all documents and agreements necessary to implement this Plan shall have
(a) been tendered for delivery, and (b) been effected or executed by all
Entities party thereto, or will be deemed executed and delivered by virtue of
the effectiveness of this Plan as expressly set forth herein, and all conditions
precedent to the effectiveness of such documents and agreements shall have
been satisfied or waived pursuant to the terms of such documents or
agreements;

**EXHIBIT K104 - Page 32**

4.   no stay of the Confirmation Order shall then be in effect, and the
Confirmation Order has become a Final Order; and

5.   any Liquidation Trust formed pursuant to the Liquidating Subchapter V
Plan filed contemporaneously herewith has the funds necessary for the
Liquidation Trustee to make all payments required to be made on or prior
to the Effective Date.

### B.  WAIVER OF CONDITIONS PRECEDENT

The conditions to the Effective Date set forth in this Article IX may be waived only by
consent of the Debtors without any notice to other parties in interest or the Bankruptcy Court and
without any formal action other than proceeding to confirm and/or consummate this Plan. The
failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted
by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the
circumstances giving rise to the failure of such condition to be satisfied (including any action or
inaction by the Debtors, in their sole discretion). The failure of the Debtors, in their sole discretion,
to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each
such right shall be deemed an ongoing right, which may be asserted at any time.

### C.  EFFECT OF NONOCCURRENCE OF CONDITIONS

If the Effective Date does not occur, then: (i) this Plan shall be null and void in all respects;
(ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an
amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection
of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement
executed pursuant to this Plan, shall be deemed null and void; and (iii) nothing contained in this
Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner
the rights of the Debtors or any other Person or Entity; or (c) constitute an admission,
acknowledgment, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## X.   RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective
Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible
under law, over all matters arising out of and related to the Subchapter V Cases for, among other
things, the following purposes:

1.   to hear and determine all matters relating to the assumption or rejection of
Executory Contracts or Unexpired Leases and the allowance of Cure amounts and Claims resulting
therefrom;

2.   to hear and determine any motion, adversary proceeding, application,
contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

3.   to Allow, Disallow, determine, liquidate, classify, estimate, or establish the
priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor,
including the resolution of any request for payment of any Claim or Interest and the resolution of

33

any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests;

4. to ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

5. to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

6. to hear and determine any application to modify this Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

7. to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

8. to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

9. to issue orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan;

10. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

11. to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

12. to determine any other matters that may arise in connection with or are related to this Plan, the Confirmation Order, any of this Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan or this Plan Supplement;

13. to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Subchapter V Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

14. to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Subchapter V Cases (whether or not the Subchapter V Cases have been closed);

EXHIBIT K104 - Page 34

15.    to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

16.    to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

17.    to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Subchapter V Cases with respect to any Person;

18.    to hear any other matter related to this Plan and not inconsistent with the Bankruptcy Code; and

19.    to enter a Final Decree closing the Subchapter V Cases.

## XI.    MISCELLANEOUS PROVISIONS

### A.    AMENDMENT OR MODIFICATION OF THIS PLAN

Alterations, amendments, or modifications of this Plan may be proposed in writing by the Debtors at any time before the Confirmation Date; provided that this Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123 and the Debtors shall have complied with Bankruptcy Code section 1125. The Debtors may modify this Plan at any time after Confirmation and before substantial consummation, provided that this Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B.    PLAN SUPPLEMENT

Draft forms of certain documents, agreements, instruments, schedules and exhibits specified in this Plan shall, where expressly so provided for in this Plan, be contained in this Plan Supplement Filed from time to time and shall be incorporated into the Plan. Unless otherwise expressly provided in this Plan, the Debtors may File any Plan Supplement until seven (7) days prior to the voting deadline and may alter, modify or amend any Plan Supplement in accordance with this Plan. Holders of Claims or Interests may obtain a copy of this Plan Supplement on the Debtors' website at https://cases.omniagentsolutions.com/?clientId=3697.

### C.    ADDITIONAL DOCUMENTS

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements

EXHIBIT K104 - Page 35

or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### D.  GOVERNING LAW

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent this Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### E.  TIME

To the extent that any time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

### F.  SEVERABILITY

If any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### G.  REVOCATION

The Debtors reserve the right to revoke and withdraw this Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw this Plan, this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

### H.  RESERVATION OF RIGHTS

This Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan or this Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### I.  SUCCESSORS AND ASSIGNS

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## J. SERVICE OF DOCUMENTS

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| Debtors | Remarkable Healthcare, LLC<br>904 Emerald Blvd.<br>Southlake, TX 76092<br>Attention: Jon Eric McPike |
| Counsel to Debtors | Gutnicki LLP<br>10440 N. Central Expy., Suite 800<br>Dallas, Texas 75231<br>Attention: Liz Boydston and Alex Rahn<br>lboydston@gutnicki.com<br>arahn@gutnicki.com |
| | Gutnicki LLP<br>45 Rockefeller Plaza, Suite 200<br>New York, New York 10111<br>Attention: Max Schlan<br>mschlan@gutnicki.com |
| United States Trustee | Office of the United States Trustee<br>110 N. College Ave., Suite 300<br>Tyler, TX 75702<br>Attention: John M. Vardeman<br>john.m.vardeman@usdoj.gov |
| Subchapter V Trustee | Subchapter V Trustee<br>10501 N Central Expy., Suite 106<br>Dallas, TX 75231-2203<br>Attention: Mark A. Weisbart<br>mweisbart@haywardfirm.com |

## K. ENTIRE AGREEMENT

Except as otherwise indicated, on the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and

EXHIBIT K104 - Page 37

representations with respect to the subject matter of this Plan, all of which will have become merged and integrated into this Plan on the Effective Date.

### L. INCONSISTENCY

To the extent the Confirmation Order and/or this Plan is inconsistent with any other agreement entered into between the Debtors and any third party, this Plan shall control any previous agreements and the Confirmation Order shall control this Plan.

### M. VOTES SOLICITED IN GOOD FAITH

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code sections 1125 and 1126, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtors, the Reorganized Debtors, and each of their Related Parties shall be entitled to, and upon the Confirmation Date will be granted, the protections of Bankruptcy Code section 1125(e).

### N. DEFAULT

No default in the performance of this Plan shall automatically result in the termination of this Plan or constitute a revocation of the Confirmation Order. Unless otherwise specified in this Plan, if any party in interest believes that the Debtors/Reorganized Debtors are in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtors/Reorganized Debtors and Counsel to the Debtors prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court enforcement of the terms of this Plan.

### O. POST-CONFIRMATION DISTRIBUTION REPORTS

The Reorganized Debtors will file post-confirmation distribution reports within 45 days of making any Distribution under this Plan and shall comply with Local Rule 3022-1 when seeking a Final Decree.

Executed this 19th day of August, 2024.        /s/ Laurie Beth McPike
Dallas, Texas                                  Laurie Beth McPike
                                               Chief Executive Officer
                                               Remarkable Healthcare, LLC

                                               And

                                               /s/ Jon E. McPike
                                               Jon E. McPike
                                               Chief Operating Officer
                                               Remarkable Healthcare, LLC

EXHIBIT K104 - Page 38

# EXHIBIT A
## PROJECTED DISPOSABLE
## INCOME



**Remarkable Healthcare of Seguin**

| Projected Disposable Income | 2024 | 2025 | 2025 |
|---|---|---|---|
| **Revenue by Payor** | | | |
| Private Pay | $928,806 | $903,194 | $921,258 |
| Medicare Part A | $1,399,636 | $1,696,293 | $1,781,108 |
| Medicaid | $2,009,454 | $2,578,225 | $2,836,048 |
| Managed Care | $1,087,558 | $1,008,784 | $1,109,662 |
| Medicare Part B | $299,299 | $111,658 | $117,241 |
| Other Income | $1,620 | $2,662 | $2,715 |
| **TOTAL Revenue** | **$5,726,373** | **$6,300,816** | **$6,768,032** |
| | | | |
| **Expenses** | | | |
| Payroll inc Tax & Benefits | $2,749,486 | $2,877,847 | $2,910,254 |
| Contract Labor | $138,684 | $132,807 | $135,361 |
| Rent | $995,846 | $1,114,249 | $1,114,249 |
| Nursing & Med Supplies | $236,690 | $209,112 | $224,618 |
| Dietary | $198,076 | $175,820 | $188,857 |
| Pharmaceuticals | $114,290 | $80,445 | $86,410 |
| Utilities, Phone, & Cable | $184,534 | $179,225 | $179,225 |
| Repairs & Maintenance | $29,142 | $23,530 | $23,530 |
| Consulting Services | $53,730 | $47,108 | $28,214 |
| Professional Services | $121,822 | $26,820 | $48,928 |
| Insurance - Commercial | $119,584 | $109,184 | $111,796 |
| Depr & Amort | $29,150 | $26,103 | $26,886 |
| Other Exp - Variable | $115,552 | $110,347 | $135,361 |
| Other Exp - Fixed | $368,708 | $336,928 | $354,020 |
| Office Supplies | $11,768 | $14,878 | $15,981 |
| Travel & Meals | $9,822 | $7,541 | $8,100 |
| Marketing | $578 | $4,106 | $4,410 |
| Lab & Radiology | $37,580 | $34,232 | $36,770 |
| Hskpg/Laundry Supplies | $31,892 | $26,075 | $28,009 |
| Transportation | $5,010 | $8,423 | $9,048 |
| Bad Debt | $75,210 | $63,008 | $118,529 |
| Interest | $7,046 | | |
| **TOTAL Expenses - Summary** | **$5,634,200** | **$5,607,788** | **$5,788,556** |
| | | | |
| Net Income/Loss | $92,173 | $693,028 | $979,476 |
| | | | |
| Interest | $7,046 | | |
| Depreciation/Amortization | $29,150 | $26,103 | $26,886 |
| **EBITDA** | **$128,369** | **$719,131** | **$1,006,362** |
| **EBITDAR** | **$1,124,215** | **$1,833,380** | **$2,120,611** |

## **EXHIBIT B**

Liquidation Analysis

[TO BE FILED]

**EXHIBIT K106**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CHAPTER 11** |
| | § | |
| **REMARKABLE HEALTHCARE OF** | § | **CASE NO. 24-40605** |
| **CARROLLTON LP, ET AL.,**[1] | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **DEBTORS.** | § | |

### <u>DEBTORS'[2] SUBCHAPTER V JOINT PLAN OF LIQUIDATION</u>

Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
Gutnicki LLP
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 895-4413
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

Max Schlan (Admitted *Pro Hac Vice*)
Gutnicki LLP
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com

COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

Dated: August 19, 2024

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Remarkable Healthcare of Carrollton, LP (5960), Remarkable Healthcare of Dallas, LP (3418), Remarkable Healthcare of Fort Worth (1692), Remarkable Healthcare of Seguin, LP (4566), and Remarkable Healthcare, LLC (5142).

[2] The specific Debtors proposing this Subchapter V Joint Plan of Liquidation are Debtors Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth (collectively, the "**DFW Debtors**").

# TABLE OF CONTENTS

I.     PLAN AND CONFIRMATION REQUIREMENTS .................................................... 1
       A.   Brief History of the Business Operations of the Debtor ............................................. 1
       B.   This Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable." ... 5
       C.   The Debtors will be Able to Make All Distributions Contemplated under this Plan . . 5

II.    DEFINITIONS AND CONSTRUCTION OF TERMS ............................................ 5
       A.   Definitions ........................................................................................................... 5
       B.   Interpretation, Application of Definitions, and Rules of Construction ..................... 14

III.   UNCLASSIFIED CLAIMS .................................................................................. 14
       A.   Treatment of Administrative Claims .................................................................... 15
       B.   Treatment of Professional Fee Claims ................................................................. 15
       C.   Priority Tax Claims ............................................................................................. 15

IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............ 15
       A.   Classification and Treatment of Claims and Interests ........................................... 16

V.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................. 18
       A.   Assumption and Rejection of Executory Contracts and Unexpired Leases .............. 18
       B.   Cure of Defaults and Adequate Assurance ........................................................... 18
       C.   Reservation of Rights .......................................................................................... 19

VI.    DISTRIBUTIONS ................................................................................................ 19
       A.   Liquidation Trustee to Make Distributions .......................................................... 19
       B.   Quarterly Reports ............................................................................................... 19
       C.   Method of Payment ............................................................................................. 20
       D.   Objections to and Resolution of Claims ............................................................... 20
       E.   Claims Objection Deadline .................................................................................. 20
       F.   Disputed Claims ................................................................................................. 20
       G.   Delivery of Distributions ..................................................................................... 20
       H.   Undeliverable or Unclaimed Distributions ........................................................... 21
       I.   Setoff and Recoupment ....................................................................................... 21
       J.   No Interest ......................................................................................................... 21

VII.   MEANS OF IMPLEMENTATION ...................................................................... 21
       A.   Establishment of Liquidation Trust ..................................................................... 21
       B.   Liquidation Trust Committee ............................................................................... 22
       C.   Appointment of the Liquidation Trustee .............................................................. 22
       D.   Beneficiaries of the Liquidation Trust ................................................................. 22
       E.   Vesting and Transfer of Assets to the Liquidation Trust ....................................... 23
       F.   Liquidation Trust Expenses ................................................................................. 23
       G.   Role of the Liquidation Trustee ........................................................................... 23

EXHIBIT K106 - Page 2

i

H.    Preservation of Right to Conduct Investigations ........................................ 24
I.    Prosecution and Resolution of Causes of Action ...................................... 24
J.    Federal Tax Treatment of the Liquidation Trust for the Assets .................... 25
K.    Limitation of Liability .......................................................................... 25
L.    Term of Liquidation Trust ..................................................................... 26
M.    Retention of Professionals .................................................................... 26
N.    Conflicts Between Liquidation Trust Agreement and Plan ......................... 26
O.    Cancellation of Existing Securities and Agreements ................................ 26
P.    Automatic Stay .................................................................................... 27
Q.    Books and Records .............................................................................. 27
R.    D&O Insurance Policies and Other Insurance Policies ............................. 27
S.    Section 1145 Exemption ...................................................................... 27

VIII.    EFFECT OF PLAN CONFIRMATION ................................................. 27
A.    Binding Effect .................................................................................... 27
B.    Compromise and Settlement of Claims ................................................. 28
C.    Plan Injunction ................................................................................... 28
D.    Protected Party Injunction .................................................................... 28
E.    Exculpation ........................................................................................ 29
F.    Releases by the Debtors ...................................................................... 29
G.    Release and Exculpation Injunction ...................................................... 30
H.    Discharge of Claims ............................................................................ 30
I.    Preservation of Causes of Action .......................................................... 32
J.    Release of Liens ................................................................................. 33
K.    Liabilities to, and Rights of, Governmental Units ................................... 33

IX.    CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ............ 34
A.    Conditions Precedent to Confirmation ................................................... 34
B.    Conditions Precedent to the Effective Date ............................................ 34
C.    Waiver of Conditions Precedent ........................................................... 35
D.    Effect of Nonoccurrence of Conditions ................................................. 35

X.    RETENTION OF JURISDICTION ....................................................... 35
XI.    MISCELLANEOUS PROVISIONS ....................................................... 37
A.    Amendment or Modification of this Plan ............................................... 37
B.    Plan Supplement ................................................................................ 37
C.    Additional Documents ......................................................................... 37
D.    Governing Law ................................................................................... 38
E.    Time .................................................................................................. 38
F.    Severability ....................................................................................... 38
G.    Revocation ......................................................................................... 38
H.    Reservation of Rights .......................................................................... 38
I.    Successors and Assigns ....................................................................... 39
J.    Service of Documents .......................................................................... 39

ii

K.  Entire Agreement ........................................................................................................ 39
L.  Inconsistency ............................................................................................................. 40
M.  Votes Solicited in Good Faith ................................................................................... 40

## I. Plan and Confirmation Requirements

To confirm a plan under Bankruptcy Code section 1191, whether this Plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "Best Interest of Creditors" test set forth under Bankruptcy Code section 1129(a)(7). *See* 11 U.S.C. § 1191. Thus, this Plan must provide Holders of Allowed Claims with not less than they would receive if the Debtors filed for relief under Chapter 7 of the Bankruptcy Code. Additionally, this Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtors will be, or are reasonably likely to be, able to make the Distributions as contemplated by this Plan. Additionally, this Plan must include: (a) a brief history of the business operations of the Debtors; (b) the Debtors' liquidation analysis; and (c) projections with respect to the Debtors' ability to make the Distributions provided for under this Plan. See 11 U.S.C. § 1190(1).

The Debtors submit that this Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and, as set forth more fully below, (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will receive not less than they would in a hypothetical chapter 7 liquidation; (ii) is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) is feasible as the Debtors will be able to make the Distributions contemplated under this Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

### A. Brief History of the Business Operations of the Debtor

The Debtors were formed in Texas from 2010 to 2013 to operate four skilled nursing facilities with approximately 270 resident patients and employees in Seguin, Fort Worth, Dallas, and Carrollton. Remarkable Healthcare is focused on the individual who needs healthcare services after their hospital stay and offers both services to help individuals return home, as well as long-term services for those who require extended care. Services are tailored to each individual to facilitate increased strength and flexibility, while minimizing pain and impairment. Remarkable Healthcare's top priority is stabilizing the patient from a clinical, nursing, and social aspect.

### B. Relationship with Landlord

Debtors Remarkable Healthcare of Seguin ("RH Seguin"), Remarkable Healthcare of Fort Worth, LP ("RH Fort Worth"), Remarkable Healthcare of Dallas, LP ("RH Dallas"), and Remarkable Healthcare of Carrollton, LP ("RH Carrollton") separately entered into four (4) different leases with four (4) different landlords on four (4) different dates.

First, the Lease Agreement and Security Agreement by and between Guadalupe NH Development, Ltd and LBJM, L.L.C., dated July 8, 2010, was entered to lease the property with the common street address 1339 Eastwood Drive, Seguin, Guadalupe County, Texas 78155 (the "Original Seguin Lease"). The Original Seguin Lease was then assigned via an Assignment of Lease Agreement and Security Agreement, dated July 8, 2010, by and between LBJM, LLC (as the Assignor) and Remarkable Healthcare of Seguin, LP (as the Assignee).

Second, the Lease Agreement and Security Agreement by and between WAG Development, Ltd. and Remarkable Healthcare of Fort Worth, LP, dated December 13, 2010, was entered to lease the property with the common address of 6649 North Riverside Drive, Fort Worth, Tarrant County, Texas 76137 (the "Original Fort Worth Lease").

Third, the Lease Agreement and Security Agreement by and between GMP Dallas NH, Ltd. and Remarkable Healthcare of Dallas, LP, dated March 9, 2012, was entered to lease the property with the common address of 3350 Bonnie View Road, Dallas County, Texas 75216 (the "Original Dallas Lease").

Fourth, the Lease Agreement and Security Agreement by and between Mustang NH, LLC[3] and Remarkable Healthcare of Carrollton, LP, dated March 13, 2013, was entered to lease the property with the common address of 4501 Plano Parkway, Carrollton, Denton County, Texas 75010 (the "Original Carrollton Lease").

On or about February 12, 2028, Debtors filed voluntary petitions for relief under Chapter 11 of the Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), jointly administered under case number 18-40295 (the "2018 Bankruptcy Cases"). In the 2018 Bankruptcy Cases, the Court confirmed Debtors' plan on May 16, 2019, and the cases were closed on April 4, 2020.

In the 2018 Bankruptcy Cases, the confirmed plan included an agreement in the form of a Promissory Note executed May 10, 2019 to cure (the "Cure Note") the above four leases. On November 21, 2022, the Former Landlords assigned the Leases respectively to KRS Seguin, KRS Fort Worth LLC, KRS Dallas LLC, and KRS Carrollton LLC (the "KRS Landlords"). However, the Former Landlords retained the Cure Note. Counsel for the KRS Landlords in these Cases is also counsel for the Former Landlords and has filed proof of claim No. 14 in these Cases for $995,867.80[4] on behalf of the Former Landlords.

### C. Relationship with Alleon Capital Partners, LLC

On or about June 7, 2019, Debtors entered into a Loan and Security Agreement (the "Loan Agreement") with Alleon Capital Partners, LLC ("Alleon" or the "Secured Lender"), which provided that Alleon would extend credit to Debtors to finance Debtors' business operations. Also, on or about June 7, 2019, Remarkable Healthcare, Remarkable Investments, LP, LBJM, LLC, Remarkable Duo, LLC, Remarkable Partners of Fort Worth, LP, Remarkable Partners, LP, Remarkable Partners of Dallas, LP, and Remarkable Rehabilitation, LP, along with Laurie Beth McPike and Jon McPike (collectively, the "Guarantors"), executed certain Guaranty and Security Agreement ("Guarantees," and together with the Loan Agreement and all documents executed in

---

[3] Mustang NH, LLC; GMP Dallas NH, LLC; WAG Development, Ltd.; and Guadalupe NH Development, Ltd. hereinafter collectively referred to as the "**Former Landlords**."

[4] It should be noted that paragraph 33 of the KRS Landlords' Motion states the original principal amount of the Cure Note was $1,520,776.58, and paragraph 34 states that the outstanding balance on the Cure Note as of the Petition Date is $995,867.80, but then states in paragraphs 36 and 37: "36. Neither RH-S nor any other of the operating Debtors has ever made any payments on the Cure Note. 37. The full balance of the Cure Note remains due and owing." These statements blatantly contradict the fact that the Cure Note principal amount was $1,520,776.58.

EXHIBIT K-106 - Page 6

connection therewith, the "Security Documents"), pursuant to which Guarantors guaranteed payment and performance of all present and future obligations of the Debtors to Alleon. Additionally, the Debtors granted Alleon a security interest in all of the Debtors' present and future accounts, chattel paper, goods (including inventory and equipment), instruments, investment property, documents, and general intangibles, letter of credit rights, commercial tort claims, deposit accounts, the billing reserve cash collateral, and the proceeds thereof (the "Cash Collateral" or "Collateral").

In the 2018 Bankruptcy Cases, Alleon provided new financing to Debtors for the Debtors' plan of reorganization. The liens and UCC-1 Financing Statements of Comerica Bank were assigned to Alleon as security for the new financing. Under the terms of the Security Documents, Alleon would make advances to Debtors so long as, before and after such advance, the unpaid balance of all cash obligations under the Loan Agreement (the "Loan Balance") did not exceed the allowable amount as defined in the Loan Agreement (the "Borrowing Base"). Debtors were required to pay Alleon, on demand, if the Loan Balance exceeded the allowable amount (an "Over Advance Amount").

Pursuant to the Loan Agreements, Debtors, Regions Bank, and Alleon also entered into certain Deposit Account Control Agreements ("DACAs"). Pursuant to the DACAs, the Debtors authorized, and Regions Bank was required to complete, a daily sweep of all funds in the Debtors' deposit accounts to be paid to Alleon.

In December of 2022, Alleon changed the way they calculate the Borrowing Base. Rather than the formula in the original Loan Agreement which based the Borrowing Base on accounts receivables, the new formula now involved a three-month average of collections over a thirty-day period. In January of 2023, the Debtors signed an amendment to the Loan Agreement, which was a renewal of the original term of the Loan Agreement (the "Second Amendment"). The Second Amendment also altered the "Maximum Amount" for the Borrowing Base, reducing it from $5,000,000 to $3,000,000. These two changes ultimately reduced the Debtors' Borrowing Base from over $4.2 million to $1.9 million. And, on top of that, the Debtors already had more than $1.9 million drawn down on the line at the time of this change, but Alleon made a concession that it would not default on the Debtors.

Shortly thereafter, the Second Amendment was changed to a Third Amendment dated February 7, 2023 (the "Third Amendment"). The Third Amendment imposed an increased interest to default rate, even though the Debtors' cash flow had temporarily decreased due to industry-specific reasons and despite Alleon having agreed not to default the Debtors. As a result, Alleon created a pull-on cash from the Debtors, cash that the Debtors needed to keep operations cash flowing.

During the second quarter of 2023, the Debtors needed to draw down on additional funds on its line of credit because census levels and revenues had not yet returned to pre-COVID levels. But the Debtors could not because any excess line of credit no longer existed. Alleon, however, agreed to extend up to a limit but imposed egregious penalties in exchange, and the Debtors had no other options but to accept those penalties. Alleon refused to return collected cash to the Debtors for operation. By withholding cash collections, Alleon was able to force the Debtors to sign the

amended agreements that provided for higher fees and higher interest due to Alleon's forced default.

On or about May 23, 2023, Alleon and the Debtors entered into a Forbearance Agreement and Fourth Amendment to the Loan Agreement (the "Forbearance Agreement"). The Forbearance Agreement imposed weekly fees in excess of \$35,000.00 even though Alleon knew that the Debtors were not in a position to pay such high fees. Nevertheless, the Debtors managed to sustain their operations for a few months because of the ERC tax credits received from the federal government, which were used to fund payroll and patient care needs.

To add to the Debtors' expenses, the census had increased by 23% since the end of 2022, but the Debtors would not see this increase in revenue from the increased census for a few months because the Medicare Advantage Plans and State Medicaid payments were increasingly delayed due to no government oversight and new federal Medicaid laws related to annual patient eligibility renewals. At the same time, the increase in the census led immediately to the Debtors having additional expenses due to take of the newly admitted patients.

Ultimately, Debtors were forced to file for subchapter V of chapter 11 in November of 2023. The Debtors, however, based on advice from prior counsel and misleading characterizations by Alleon and the Landlord that they would work with the Debtors if they dismissed their cases, voluntarily agreed to dismiss the case in February of 2023. Shortly, thereafter, it became clear that Alleon would not follow through on its word to accept \$10,000 per week from the Debtors and, on top of that, beginning on or about 8:00 a.m. March 1, 2024, Alleon swept every single dollar the Debtors received each day and refused to fund, advance, or return the Debtors' money. Between March 1, 2024 and March 20, 2024, Alleon swept \$951,860.43.

### D.    The QIPP Partnership with West Wharton County Hospital District

In late 2023, while in bankruptcy, the Debtors started working toward entering into the Quality Incentive Payment Program for Nursing Homes ("QIPP") through an arrangement with West Wharton County Hospital District ("WWCHD"). The QIPP would allow the Debtors to net additional revenues starting in the fourth quarter of 2024. On March 1, 2024, the Debtors executed three agreements for each of the four debtors RH Fort Worth, RH Carrollton, RH Dallas, and RH Seguin. In addition to a Sublease, WWCHD and each Debtor entered into a Management Agreement Dated as of March 1, 2024 (the "Management Agreement"), and an Operations Transfer Agreement between Remarkable Healthcare, LLC and WWCHD.

Entering the QIPP program required the Debtors to execute change of ownership ("CHOW") documents to transfer their Medicare Identification Number and provider agreements to WWCHD. The CHOW process put a hold on not only the Debtors' ability to bill Medicaid (which accounts for the majority of their patients) for the entire time from March 1, 2024 until the CHOW is complete, (the "CHOW Hold"), but the CHOW Hold has also held up certain Medicare payments as well. The CHOW Hold has held up the following in prepetition accounts receivables: RH Carrollton - \$340,993.91, RH Dallas - \$371,029.96, and RH Fort Worth - \$484,133.01—for a total of approximately \$1.196 million for prepetition accounts receivables for the DFW Debtors. The CHOW Hold also held up the following post-petition accounts receivables: RH Carrollton - \$980,516.70, RH Dallas - \$716,995.71, and RH Fort Worth - \$209,589.75—for a total of

approximately $1.9 million in post-petition accounts receivables for the DFW Debtors that will continue to accrue.[5] Once the CHOW Hold was released, the Debtors believed they would begin to see a substantial influx of collections on their pre- and post-petition accounts receivables. Nevertheless, even with the CHOW being finalized for certain facilities, the Debtors are no longer in control of billing for the DFW Debtors or for the management of the DFW Facilities. Although the Debtors have actively tried to facilitate Compass—the new biller—with the billing and collections for the DFW Facilities, very few collections have occurred. Nevertheless, with the post-petition billings able to resume and there should be an influx of the accounts receivables that had been held up, and the Debtors will pay their creditors through this Plan.

### E.   This Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable."

In accordance with Bankruptcy Code section 1191(c), this Plan provides that all Distributions will be funded with the Debtors' assets through the Liquidation Trust within the Commitment Period.

Accordingly, this Plan complies with the "best interest of creditors" test and is "fair and equitable" because it proposes to provide total Distributions to Holders of Allowed Claims that exceed the Liquidation Value and are not less than the Debtors' projected Disposable Income for the Commitment Period.

### F.   The Debtors will be Able to Make All Distributions Contemplated under this Plan.

In accordance with Bankruptcy Code sections 1191(c)(3)(B)(i) and (ii), this Plan demonstrates that the Debtors have sufficient Cash and will have sufficient future earnings to provide regular, annual Pro Rata Share Distributions to Holders of Allowed General Unsecured Claims over the Commitment Period.

## II.   Definitions and Construction of Terms

### A.   Definitions

"*Administrative Claim*" means any Claim against any Debtor for costs and expenses of administration of the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; and (c) all Allowed requests for

---

[5] These accounts receivable reflect through July 2024. Moreover, due to the Debtors' accounting software, post-petition accounts receivables are calculated as of April 1, 2024. Because the Petition Date falls 11 days before then, post-petition accounts receivable subject to the CHOW Hold are certainly higher than the calculation set forth herein. Additionally, as of the filing of this Plan, the new operators of RH Dallas and RH Carrollton (entities related to Landlords) have not executed the management transfer agreements, which set forth how funds belonging to the Debtors should be allocated to the Debtors, including checks, patient payments, social security payments, etc.

compensation or expense reimbursement for making a substantial contribution in the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5).

"*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, with the exception of Professional Fee Claims, which shall be the first Business Day that is thirty (30) days after the Effective Date.

"*Affiliate*" shall have the meaning set forth in Bankruptcy Code section 101(2).

"*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under this Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not Contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to this Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by this Plan (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. Unless otherwise specified in this Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; (3) any fine, penalty or forfeiture; or (4) any attorneys' fees and expenses. Any Claim or Interest that has been or is hereafter listed in the Schedules as Contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Bankruptcy Code section 502(d) shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest.

"*Assets*" means mean all assets of the Debtors, including, without limitation, all real, personal, tangible and intangible property of the Debtors, including, without limitation, any property of the kind or nature accounted for on the Debtors' balance sheet as of the Effective Date.

"*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to this Plan, Filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date.

"*Avoidance Actions*" means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Texas, having jurisdiction over the Subchapter V Cases or, if the Bankruptcy Court ceases to exercise jurisdiction over the Subchapter V Cases, such court or adjunct thereof that exercises jurisdiction over the Subchapter V Cases in lieu of the United States Bankruptcy Court for the Eastern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"*Bar Date(s)*" means the Claims Bar Date, the Governmental Bar Date, or the Rejection Damages Bar Date, as applicable; and "Bar Dates" means a collective reference to the Claims Bar Date, the Governmental Bar Date, and the Rejection Damages Bar Date.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case now owned or hereafter acquired by the Debtors and/or their Estates, and in each case, whether known or unknown, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Subchapter V Cases, including through the Effective Date.

"*Claim*" shall have the meaning set forth in Bankruptcy Code section 101(5), against any Debtor.

"*Claims Bar Date*" means the deadline for filing Proofs of Claim, which is May 29, 2024.

"*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, and (b) such other date as may be specifically fixed by order of the Bankruptcy Court.

"*Claims Register*" means the official register of Claims.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

"*Collateral*" means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

"*Commitment Period*" means the three (3)-year period contemplated and set forth under Bankruptcy Code section 1191(c).

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under Bankruptcy Code section 1128 at which the Debtors seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

"*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

"*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Consummation*" means the occurrence of the Effective Date.

"*Contingent*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, any contingent or unliquidated Claim asserted or which may be asserted against the Debtors.

"*Cure Notice*" means a notice sent to counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under this Plan pursuant to Bankruptcy Code section 365, which shall include: (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes; provided that the Schedule of Assumed Executory Contracts and Unexpired Leases and

any amended Schedule of Assumed Executory Contracts and Unexpired Leases may each constitute a "Cure Notice" hereunder.

"*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against a Debtor based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

"*D&O Insurance Policies*" means all primary and excess insurance policies of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of the Debtors' directors and officers.

"*Debtor Release*" has the meaning ascribed to such term in Article VIII.F.

"*Debtor Releasing Parties*" has the meaning ascribed to such term in Article VIII.F.

"*Debtors*" means, collectively, the DFW Debtors.

"*DFW Debtors*" means, collectively, Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, and Remarkable Healthcare of Fort Worth, LP.

"*DFW Facilities*" means the three (3) Facilities that will not be operated by the Reorganized Debtors located at the following common street addresses: (i) 3350 Bonnie View Road, Dallas, Texas 75216; (ii) 6649 North Riverside Drive, Fort Worth, Texas 76137; and (iii) 4501 Plano Parkway, Carrollton, Texas 75010.

"*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, a Claim or Interest, or any portion thereof that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero ($0.00), in an unknown amount or as Contingent, Disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disputed*" or "*Disputed Claim*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest, or any portion thereof, that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection Filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, (d) any Claim or Interest evidenced by a Proof of Claim which amends a Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

"*Distribution*" means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

"*Effective Date*" means the date which is the first Business Day on which the conditions set forth in Article IX.B have been satisfied or waived.

"*Entity*" shall have the meaning set forth in Bankruptcy Code section 101(15).

"*Estate*" means the estate of any Debtor created under Bankruptcy Code sections 301 and 541 upon commencement of the applicable Debtor's Subchapter V Cases.

"*Exculpated Parties*" means collectively, and in each case in their capacity as such during the Subchapter V Cases the Debtors and each of their directors, officers, attorneys, investment bankers, accounts, consultants, and other Professionals.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Facilities*" means the facilities owned by the KRS Landlords and operated by the Debtors.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Subchapter V Cases.

"*Final Decree*" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Subchapter V Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Subchapter V Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, re-argument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired.

"*General Unsecured Claim*" means any Unsecured Claim.

"*Governmental Bar Date*" means the deadline for Governmental Units to file Proofs of Claim, which is September 16, 2024.

"*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"*Gutnicki*" means Gutnicki LLP.

"*Holder*" means the beneficial holder of any Claim or Interest.

"*Impaired*" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"*Interest*" means any "equity security" in a Debtor, as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"*KRS Landlords*" or "*KRS*" or ""*Landlord*" means KRS Seguin, KRS Fort Worth LLC, KRS Dallas LLC, KRS Carrollton LLC, Kilgore Property Management, LLC, and applicable affiliates.

"*Lien*" shall have the meaning set forth in Bankruptcy Code section 101(37).

"*Liquidation Trust*" means the Liquidation Trust established pursuant to this Plan and the Liquidation Trust Agreement.

"*Liquidation Trust Agreement*" means the Liquidation Trust Agreement, as may be amended, supplemented, restated, or otherwise modified from time to time pursuant to the terms thereof, by and between the Debtors and the Liquidation Trustee, the form of which shall be subject to the approval of the Debtors, the then-current form of which shall be included in the Plan Supplement.

"*Liquidation Trust Assets*" means all Avoidance Actions that have not already been settled as of the Effective Date, which are property of the Debtors or their Estates as of the Effective Date, all other Causes of Action, which are property of the Debtors or their Estates as of the Effective Date, all other assets of the Debtors and their Estates to be liquidated through this Plan.

"*Liquidation Trust Committee*" means the committee of three members, to be named in the Liquidation Trust Agreement, to oversee the Liquidation Trust. Any compensation to be paid to the members of the Liquidation Trust Committee shall be paid from Liquidation Trust Assets.

"*Liquidation Trustee*" means the individual set forth in the Liquidation Trust Agreement.

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Texas, or any other court having jurisdiction over the Subchapter V Cases.

"*Omni*" means Omni Agent Solutions, Inc., which was retained as claims, noticing, and solicitation agent on June 18, 2024.

"*Person*" shall have the meaning set forth in Bankruptcy Code section 101(41).

"*Petition Date*" means March 20, 2024, the date on which the Debtors commenced the Subchapter V Cases as applicable to each particular Debtor.

"*Plan*" means this *Debtors' Subchapter V Joint Plan of Liquidation*, dated as of August 19, 2024, including all exhibits, supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Documents*" means this Plan, the Plan Supplement, and all the exhibits and schedules attached to each of the foregoing.

"*Plan Proponents*" means the Debtors.

"*Plan Supplement*" means the supplemental documents, schedules, and exhibits to this Plan to be Filed by the Debtors containing substantially final forms of, among other things, retained Causes of Action, and the Schedule of Assumed Executory Contracts and Unexpired Leases. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

"*Priority Unsecured Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

"*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under this Plan.

"*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered before or on the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331.

"*Professional Fee Claim*" means any Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

"*Professional Fee Claims Bar Date*" means the first business day which is forty-five (45) days after the Effective Date.

"*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Subchapter V Cases.

"*Protected Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors; (b) the Debtors' Professionals: Gutnicki, LLP and Omni and (c) the individual members of the Debtors' management.

"*Rejection Claims*" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by any of the Debtors, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"*Rejection Damages Bar Date*" means the date by which Rejection Claims must be Filed, thirty (30) days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.

"*Released Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors; (b) the Debtors' Professionals: Gutnicki, LLP and Omni; and (c) the individual members of the Debtors' management.

"*Releasing Parties*" means the Debtor Releasing Parties.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such Schedules may be amended, modified, or supplemented from time to time.

"*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed through the Plan. The Schedule of Assumed Executory Contracts and Unexpired Leases shall be attached to the Plan Supplement.

"*Secured Claim*" means any Claim against any Debtor: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to this Plan.

"*Subchapter V Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court being jointly administered under Case No. 24-40605.

"*Subchapter V Trustee*" means Mark Weisbart.

"*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Texas.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is "unimpaired" within the meaning of Bankruptcy Code section 1124.

"*Unsecured Claim*" means any Claim other than Administrative Claims, Secured Claims, and Priority Unsecured Claims.

## B.   Interpretation, Application of Definitions, and Rules of Construction

The following rules of construction, interpretation, and application shall apply:

**(1)**   Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

**(2)**   Unless otherwise specified, each section, article, schedule, or exhibit reference in this Plan is to the respective section in, article of, schedule to, or exhibit to this Plan.

**(3)**   The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

**(4)**   The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of this Plan.

**(5)**   A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

**(6)**   The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.

**(7)**   Unless otherwise provided, any reference in this Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

**(8)**   In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## III.   Unclassified Claims

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes and Interests set forth in Article III of this Plan.

### A.    Treatment of Administrative Claims

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a less favorable treatment with the Debtors, each Holder of an Allowed Administrative Claim will receive an amount of Cash equal to the full unpaid amount of such Allowed Administrative Claim on (1) the Effective Date or (2) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable.

All requests for payment of Administrative Claims must be Filed and served on the Debtors, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Objections to such requests, if any, must be Filed and served on the Debtors, as applicable, and the requesting party no later than fifteen (15) days after the earlier of (i) the Administrative Claims Bar Date or (ii) the date such request for payment of an Administrative Claim is filed. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

### B.    Treatment of Professional Fee Claims

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules.  Unless otherwise agreed to, once approved by the Bankruptcy Court, an Allowed Professional Fee Claim shall receive an amount of Cash equal to the full unpaid amount of the Allowed Professional Fee Claim (1) on or promptly thereafter the Effective Date or (2) the first Business Day after the date that is thirty (30) calendar days after the date on which a Professional Fee Claim becomes an Allowed Professional Fee Claim.

### C.    Priority Tax Claims

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtors, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the full unpaid amount of such Allowed Tax Claim on (1) the Effective Date or (2) the first Business Day after the date that is thirty (30) calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim.

### IV.    Classification and Treatment of Claims and Interests

Pursuant to Bankruptcy Code sections 1122, 1123, and 1190, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation

and distribution pursuant to this Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan is premised upon the substantive consolidation of the Debtors solely for the purposes of voting, determining which Classes have accepted this Plan, confirming this Plan, and the resultant treatment of Claims and Interests and Distributions under this Plan.

This Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|-------|-------------------|--------|---------------|--------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote | TBD |
| 4 | Equity Interests | Impaired | Deemed to Reject | 0% |

### A.   Classification and Treatment of Claims and Interests

Except to the extent that the Debtors and a Holder of an Allowed Claim or Allowed Interest agree in writing to less favorable treatment for such Allowed Claim or Allowed Interest, such Holder shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

#### (1)   Class 1 – Secured Claims

*Classification.* Class 1 consists of all Secured Claims.

*Treatment.* Except to the extent that a Holder of an Allowed Secured Claim and the Debtors agree in writing to less favorable treatment of its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Secured Claim: (i) payment in full, in Cash, of the unpaid portion of its Allowed Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes Allowed or (ii) such other treatment as the Debtors and the Holder of such Allowed Secured Claim may agree.  Notwithstanding this treatment, as of the Effective Date, the Debtors do not believe that there will be any Allowed Secured Claims made against the Debtors.

*Voting.* Class 1 is Unimpaired. Holders of Allowed Secured Claims in Class 1 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Secured Claims are not entitled to vote to accept or reject this Plan.

### (2)    Class 2 – Priority Unsecured Claims

*Classification.* Class 2 consists of all Priority Unsecured Claims.

*Treatment.* Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtors agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim: (i) payment in full, in Cash, on the later of the Effective Date and the date on which such Priority Unsecured Claim becomes Allowed; (ii) payment in the ordinary course of business between the Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or (iii) such other treatment as the Debtors, and the Holder of such Allowed Priority Unsecured may agree.

*Voting.* Class 2 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 2 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject this Plan.

### (3)    Class 3 – General Unsecured Claims

*Classification.* Class 3 consists of all General Unsecured Claims.

*Treatment.* Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agree to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed General Unsecured Claim, its Pro Rata share of the beneficial proceeds of the Liquidation Trust Assets. All Distribution to Allowed General Unsecured Claims shall be completed within the Commitment Period.

*Voting.* Class 3 is Impaired. Holders of Allowed General Unsecured Claims in Class 4 are entitled to vote to accept or reject this Plan.

### (4)    Class 4 – Interests in the Debtors

*Classification.* Class 4 consists of all Interests in the Debtors.

*Treatment.* Holders of Interests in the Debtors shall not receive any Distribution under this Plan on account of such Interests. Upon the Effective Date, all Interests shall be cancelled.

*Voting.* Class 4 is fully impaired. Holders of Allowed Interests in Class 4 are conclusively presumed to have rejected this Plan under Bankruptcy Code section 1126(g). Holders of Interests are not entitled to vote to accept or reject this Plan.

## V.   Executory Contracts and Unexpired Leases

### A.   Assumption and Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed rejected by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Bankruptcy Code sections 365 and 1123. The Debtors reserve the right to assume and assign any executory contrary or Unexpired Lease until the Confirmation Date.  All assumed Executory Contracts and Unexpired Leases shall remain in full force.

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed to have been assumed. The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the assumptions as of the Effective Date. Unless otherwise indicated, all assumptions of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date.

### B.   Cure of Defaults and Adequate Assurance

Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash by the Debtors on the Effective Date or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure payments or (b) any other matter pertaining to assumption, the Cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the Executory Contract or Unexpired Lease at issue shall be deemed assumed and assigned by the Debtors unless otherwise ordered by the Bankruptcy Court. The Debtors or the Liquidation Trust, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease not later than thirty (30) days after the entry of a Final Order resolving any such dispute.

At least ten (10) days before the Confirmation Hearing, the Debtors will provide for notices of proposed assumption and assignment and proposed Cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, related Cure amount, or adequate assurance must be Filed, served, and actually received by the Debtors at least seven (7) days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have consented to such assumption and assignment or proposed Cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors may remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

### C.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

### VI.    Distributions

### A.    Liquidation Trustee to Make Distributions

Unless ordered otherwise in the Confirmation Order, the Liquidation Trustee shall make all payments and Distributions required by this Plan. The Liquidation Trustee shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform his or her duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent him or her with respect to his or her responsibilities (as applicable); and (d) exercise such other powers as may be vested in the Liquidation Trustee by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Liquidation Trustee to be necessary and proper to implement the provisions hereof. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Liquidation Trustee on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Liquidation Trustee shall be paid in Cash by the Liquidation Trust.

### B.    Quarterly Reports

In no event later than ninety (90) days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust has been provided for Distributions in accordance with this Plan, the Liquidation Trustee shall file with the

Bankruptcy Court a report setting forth the amounts, recipients and dates of all Distributions made by the Liquidation Trustee under this Plan through each applicable reporting period.

### C.      Method of Payment

Unless otherwise expressly agreed in writing, payments of Cash under this Plan shall be made by a check drawn on a domestic bank, ACH transfer, or an electronic wire. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

### D.      Objections to and Resolution of Claims

The Liquidation Trustee shall have the right to File objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; provided, however, that only the Liquidation Trustee has the authority to compromise, settle, otherwise resolve, or withdraw any objections without approval of the Bankruptcy Court.

### E.      Claims Objection Deadline

The Objection Deadline shall be sixty (60) days after the Effective Date; provided, however, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Liquidation Trustee.

### F.      Disputed Claims

Notwithstanding any other provision of this Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan. On any date that Distributions are to be made under the terms of this Plan, the Liquidation Trustee shall deposit in one (1) or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto.  Such Cash shall be provided by the Liquidation Trust. The Liquidation Trustee shall also segregate any interest, dividends, or proceeds of such Cash. Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

### G.      Delivery of Distributions

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors or Liquidation Trustee, as applicable, after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtors or Liquidation Trustee have not received a written notice of a change of address.

**EXHIBIT K-1** **06 - Page 24**

**H.     Undeliverable or Unclaimed Distributions**

If the Distribution to the Holder of any Claim is returned to the Liquidation Trustee as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidation Trustee is notified in writing of such Holder's then-current address, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and revert to the Liquidation Trust and returned by the Liquidation Trustee to the Liquidation Trust at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in this Plan, nothing in this provision shall act as a bar to entry of a Final Decree Closing the Subchapter V Cases. Any uncashed or undeliverable Distributions reverted back the Liquidation Trust may be used for future Distributions.

**I.     Setoff and Recoupment**

From and after the Effective Date, the Liquidation Trustee may, to the extent permitted by Bankruptcy Code section 553 or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made and any Causes of Action of any nature whatsoever that the Liquidation Trustee may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor any other Cause of Action.

**J.     No Interest**

Unless otherwise explicitly provided for in this Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**VII.   Means of Implementation**

**A.     Establishment of Liquidation Trust**

On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and, in their capacity as Liquidation Trustee, accept all Assets on behalf of the beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Assets not in the Liquidation Trustee's possession. The Liquidation Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Liquidation Trust shall be established for the purposes of, inter alia, (i) liquidating any non-Cash Assets; (ii) prosecuting and resolving the Causes of Action; (iii) challenging and resolving Disputed Claims; and (iv) maximizing recovery of the Assets for the benefit of the beneficiaries thereof, with no objective to continue or engage in the conduct of a trade or business,

except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidation Trust.

## B.    Liquidation Trust Committee

On the Effective Date, those members named in the Liquidation Trust Agreement shall immediately and without further need for documentation or Bankruptcy Court Approval, be deemed to act as Liquidation Trust Committee.  The Liquidation Trust Committee shall be dissolved on the date the Subchapter V Cases close.  The Liquidation Trust Committee shall approve retention and fees of the Liquidation Trust's professional(s), approve the initiation of any Cause of Action and the settlement or other disposition thereof, consult with the Liquidation Trustee in connection with the administration of the Liquidation Trust, make recommendations to the Liquidation Trustee regarding with the administration of the Liquidation Trust, and submit questions to the Liquidation Trustee concerning administration of the Debtors' Estates and the Liquidation Trust.

## C.    Appointment of the Liquidation Trustee

The Liquidation Trustee shall be appointed by the Debtors, in consultation with the U.S. Trustee and the Subchapter V Trustee. Following appointment, the Liquidation Trustee shall act in accordance with this Plan, Liquidation Trust Agreement, and Confirmation Order, and in such capacity shall have the same powers as the officers of the Debtors, subject to the provisions hereof (and all bylaws, articles of incorporation and related corporate documents are deemed amended by this Plan to permit and authorize the same). The Liquidation Trustee may be removed by the Liquidation Trust Committee, for cause, upon prior written notice to the Liquidation Trustee as set forth in the Liquidation Trust Agreement or for cause by the Bankruptcy Court after notice and hearing commenced by any creditor with an Allowed Claim or other right of payment under this Plan. In the event of resignation or removal, death or incapacity of the Liquidation Trustee, the Liquidation Trust Committee shall designate another Person or Entity to serve as Liquidation Trustee and thereupon the successor Liquidation Trustee, without any further act or need for an order of the Bankruptcy Court, and shall become fully vested with all of the rights, powers, duties and obligations of the predecessor; provided, however, that the Liquidation Trustee shall be deemed removed on the date the Subchapter V Cases are closed, and no successor thereto shall be designated. The Liquidation Trustee and its professionals shall be entitled to compensation payable from the Liquidation Trust.

## D.    Beneficiaries of the Liquidation Trust

Holders of Allowed Claims entitled to Distributions shall be the beneficiaries of the Liquidation Trust. Such beneficiaries shall be bound by the Liquidation Trust Agreement. The interests of the beneficiaries in the Liquidation Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

**EXHIBIT K-6 - Page 26**

### E.    Vesting and Transfer of Assets to the Liquidation Trust

Pursuant to Bankruptcy Code section 1141(b), the Assets shall vest in the Liquidation Trust, free and clear of all Liens, Claims and Interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Liquidation Trustee may abandon or otherwise not accept any non-Cash Assets that the Liquidation Trustee believes, in good faith, have no value to the Liquidation Trust. Any non-Cash Assets that the Liquidation Trustee so abandons or otherwise does not accept shall not be property of the Liquidation Trust.

### F.    Liquidation Trust Expenses

Subject to the provisions of the Liquidation Trust Agreement, all costs, expenses and obligations incurred by the Liquidation Trustee, including professional fees, in administering this Plan and the Debtors' Estates, and/or maintaining and administering the Liquidation Trust, shall be a charge against any Liquidation Trust Assets.

### G.    Role of the Liquidation Trustee

#### (1)    Exclusive Trustee

The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust and the Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include, without limitation, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Assets; (d) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement, Causes of Action vested in the Liquidation Trust; (e) object to, challenge, negotiate, or settle any Disputed Claims; (f) dissolve the Debtors and any subsidiaries of the Debtors; (g) recover any Assets for the benefit of the Liquidation Trust, including, but not limited to, accounts receivable of the Debtors, (h) abandon any Assets of the Liquidation Trust that it deems to be burdensome or of inconsequential value; and (i) undertake all administrative functions of this Plan, including the ultimate closing of the Debtors' Subchapter V Cases.  The Liquidation Trustee is the successor to the Debtors and their Estates.

#### (2)    Possession of Books and Records

On the Effective Date, the Liquidation Trustee shall: (a) take possession of all books, records, and files of the Debtors and their respective Estates; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required.

#### (3)    Investment of Cash

The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code section 345 or in other prudent investments;

provided, however, that such investments are permitted to be made by a liquidation trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

### (4)    Tax Returns

The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Liquidation Trust also shall annually (for tax years in which Distributions from the Liquidation Trust are made), send to each beneficiary a separate statement setting forth the beneficiary's share of item income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidation Trust. The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidation Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidation Trust. As soon as practicable after the Effective Date, the Liquidation Trust shall make a good faith valuation of assets of the Liquidation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Governmental Unit for taxing purposes. The Liquidation Trustee may request an expedited determination of taxes of the Debtors or of the Liquidation Trust under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Debtors and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust. The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Liquidation Trust. The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidation Trustee shall be subject to any such withholding and reporting requirements.

### (5)    Allowed Tax Obligations

The Liquidation Trust shall be responsible for payments of all Allowed Tax Obligations of the Debtors, and any taxes imposed on the Liquidation Trust.

### H.    Preservation of Right to Conduct Investigations

The preservation for the Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors prior to the Effective Date shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust.

### I.    Prosecution and Resolution of Causes of Action

From and after the Effective Date, prosecution and settlement of all Causes of Action transferred to the Liquidation Trust shall be the sole responsibility of the Liquidation Trustee pursuant to this Plan and the Confirmation Order. From and after the Effective Date, the

Liquidation Trustee shall have, with requisite approval of the Liquidation Trust Committee, exclusive rights, powers, and interests of the Debtors' Estates to pursue, settle or abandon such Causes of Action as the sole representative of or successor to the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3). Proceeds recovered from all Causes of Action will be deposited into the Liquidation Trust and will be distributed by the Liquidation Trustee to beneficiaries in accordance with the provisions of this Plan. **All Causes of Action that are not expressly released or waived under this Plan are reserved and preserved and vest in the Liquidation Trust in accordance with this Plan. No Person may rely on the absence of a specific reference in this Plan or the Plan Supplement to any Cause of Action against it as any indication that the Debtors or Liquidation Trustee will not pursue any and all available Causes of Action against such Person or Entity, except as otherwise provided in this Plan.** No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or substantial consummation of this Plan, except as otherwise provided in this Plan. No Causes of Action that have been otherwise released or exculpated shall be transferred to the Liquidation Trust; the Liquidation Trustee shall not have standing to pursue such claims or released or exculpated Causes of Action, and all such released or exculpated claims and Causes of Action shall be waived, released and discharged pursuant to this Plan. A nonexclusive schedule of Causes of Action shall be attached to the Plan Supplement. The Debtors' inclusion of, or failure to include, any right, action or claim in Plan Supplement shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that the Liquidation Trust may hold against any Entity, and all Entities are hereby notified that all such claims, demands, rights or Causes of Action are preserved, except as otherwise provided in this Plan. To the extent the Liquidation Trustee believes there to be a conflict in the handling of a specific Cause of Action, the Liquidation Trustee shall report the conflict to the Liquidation Trust Committee and may, in consultation with the Liquidation Trust Committee, assign the Cause of Action to the Liquidation Trust Committee, which shall be directly responsible for the handling of the specific Cause of Action.

### J.   Federal Tax Treatment of the Liquidation Trust for the Assets

For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidation trust under section 301.7701-4 of the Treasury Regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a Distribution from the Debtors and the Liquidation Trust's beneficiaries will be treated as the grantors and owners thereof.

### K.   Limitation of Liability

No recourse will ever be had, directly or indirectly, against the Liquidation Trustee, members of the Liquidation Trust Committee, and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trustee under this Plan or by reason of the creation of any indebtedness by the Liquidation Trust or the Liquidation Trustee under this Plan. All such liabilities

under this Plan will be enforceable only against, and will be satisfied only out of, the Assets. The Liquidation Trustee and his agents shall not be deemed to be the agent for any holder of a Claim in connection with Distributions made under this Plan. The Liquidation Trustee, members of the Liquidation Trust Committee, and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound judgment; *provided, however*, that this section will not apply to any specific act where the Bankruptcy Court determines in a Final Order that the action or inaction was grossly negligent or the result of willful misconduct. No such person shall be liable for any action or inaction of another person.

### L. Term of Liquidation Trust

The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all of the Assets have been liquidated, (ii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, and (iii) the Debtors' Subchapter V Cases have been closed.

### M. Retention of Professionals

Subject to the terms of this Plan and Confirmation Order to the extent they address the treatment and payment of Professional Fees incurred prior to the Effective Date, the Liquidation Trustee may, with requisite approval from the Liquidation Trust Committee, retain and compensate attorneys and other professionals to assist in their duties on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate without Bankruptcy Court approval. Representation of both the Liquidation Trustee and Liquidation Trust Committee by such professionals shall not be deemed to be a conflict of interest, make such professionals have an interest adverse to the Estates or the Debtors, or otherwise not be disinterested. Upon the appointment of the Liquidation Trustee under the Liquidation Trust Agreement, any Professionals retained by the Debtors shall no longer be obligated or required to continue to represent the Debtors after the Effective Date (unless such Professionals have agreed in writing to continue such representation) and, if such Professional elects to withdraw from such representation, such Professional shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Subchapter V Cases and the confirmation of this Plan. The confirmation of this Plan shall constitute any necessary consent and court approval to withdraw from such representation.

### N. Conflicts Between Liquidation Trust Agreement and Plan

In the event of any direct conflicts between the express terms of the Liquidation Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

### O. Cancellation of Existing Securities and Agreements

Except for purposes of evidencing a right to Distributions under this Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or Interests or rights of any Holder of a Claim or Interest against any of the Debtors, including, but

not limited to, all indentures, notes, bonds and share certificates evidencing such Claims and Interests and any agreements or guarantees related thereto, shall be cancelled, terminated, deemed null and void and satisfied as against the Debtors, but not as against any other Person or Entity.

### P.    Automatic Stay

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Subchapter V Cases until the Effective Date.

### Q.    Books and Records

As part of the appointment of the Liquidation Trustee, to the extent not already transferred on the Effective Date, the Debtors shall transfer dominion and control over all of their books and records to the Liquidation Trustee in whatever form, manner or media those books and records existed immediately prior to the transfer thereof to the Liquidation Trustee. The Liquidation Trustee may abandon all such books and records upon the closing of these Subchapter V Cases. Pursuant to section 554 of the Bankruptcy Code, this Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records of the Debtors.

### R.    D&O Insurance Policies and Other Insurance Policies

No prepaid D&O Insurance Policies or other prepaid insurance policies shall be cancelled, and the Debtors' directors, officers, and employees who have valid claims against the D&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies. As such, and notwithstanding anything in this Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies or other insurance policies, to the extent the contract providing for such is determined to be an Executory Contract, shall be deemed assumed by the Debtors. To the extent the D&O Insurance Policies or other insurance policies are invoked by the Liquidation Trustee, the Liquidation Trust shall pay any and all deductibles related to the D&O Insurance Policies.

### S.    Section 1145 Exemption

In accordance with Bankruptcy Code section 1145, the retention of Interests, to the extent applicable, under this Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## VIII.   Effect of Plan Confirmation

### A.    Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed

binding upon the Debtors and any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

### B. Compromise and Settlement of Claims

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims set forth in Article VIII of this Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and Holders of Claims.

### C. Plan Injunction

**Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been satisfied or released pursuant to this Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to this Plan or that is otherwise inconsistent with the provisions of this Plan.**

### D. Protected Party Injunction

**The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on account of any Claim or Cause of Action against a Protected Party in connection with or arising out of the administration of, or otherwise related to, the Subchapter V Cases; the negotiation and pursuit of this Plan and all related agreements, instruments, and other documents; the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan;**

28

the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The other protections provided by this Section shall be in addition to, and shall not limit, any other releases, indemnifications, injunctions, exculpations, any and all other applicable law or rules protecting the Protected Parties from liability. For the avoidance of doubt, nothing in this Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units.

E.     Exculpation

Notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action, Claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Subchapter V Cases, the Filing of the Subchapter V Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, Plan or any other contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the issuance of securities pursuant to this Plan, or the distribution of property under this Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have, and upon completion of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, this Plan, and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e). Notwithstanding anything contained herein, no exculpation shall be given in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

F.     Releases by the Debtors

Pursuant to Bankruptcy Code section 1123(b), and notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, the Released Parties shall be deemed released and discharged by the Debtors and their Estates (the "Debtor Releasing Parties") from any and all claims, interests, obligations, debts, rights, suits, damages, Causes of Action,

remedies, and liabilities whatsoever, including any derivate claim asserted on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Subchapter V Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Subchapter V Cases, the negotiation, formulation, preparation, implementation or administration of this Plan, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (the "Debtor Release"). Notwithstanding anything contained herein, no release shall be given in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

For the avoidance of doubt, the Debtor Release shall not operate to waive, release, or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by a Final Order of the Court or any other court of competent jurisdiction; and/or (ii) the Rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Court.

G.     Release and Exculpation Injunction

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, fines, penalties, or liabilities released or exculpated pursuant to this Plan.

H.     Discharge of Claims

The Debtors shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; however, the timing of the discharge will depend on whether this Plan

is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

### (1) Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)

If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), the Debtors shall receive a discharge pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### (2) Cramdown Plan - Discharge Under Bankruptcy Code section 1192

If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtors shall receive a discharge "as soon as practicable after completion by the [Debtors] of all payments due within the [Commitment Period]." *See* 11 U.S.C. § 1192. Except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind

specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date and the completion of all Distributions contemplated under this Plan.

## I.    Preservation of Causes of Action

### (1)    Vesting of Causes of Action

i.    Except as otherwise provided in this Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors and the Estates may hold against any Entity shall vest in the Liquidation Trust on and after the Effective Date.

ii.    Except as otherwise provided in this Plan or Confirmation Order, after the Effective Date, the Liquidation Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action that were held by the Debtors and the Estates, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Subchapter V Cases.

### (2)    Preservation of All Causes of Action Not Expressly Settled or Released

i.    Unless a Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including the Confirmation Order) of the Bankruptcy Court, the Debtors and their Estates expressly reserve such Cause of Action for later adjudication or administration by the Liquidation Trustee (including, without limitation, Causes of Action not specifically identified or described in this Plan or elsewhere or of which the Debtors or the Liquidation Trust Committee may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors or the Liquidation Trust Committee at this time, or facts or circumstances which may change or be different from those the Debtors or the Liquidation Trust Committee now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in this Plan or any other Final Order (including the Confirmation Order). In addition, the Debtors and their Estates expressly reserve the right of the Liquidation Trustee to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. A non-exhaustive list of preserved Causes of Action shall be attached to the Plan Supplement.

           ii.     Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a Proof of Claim against the Debtors in the Subchapter V Cases; (ii) the Debtors have objected to any such Entity's Proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors as disputed, contingent or unliquidated.

### J.     Release of Liens

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Debtors and the Liquidation Trustee.

### K.     Liabilities to, and Rights of, Governmental Units

**(1)**     As to the United States, nothing in this Plan shall limit or expand the scope of the release or injunction to which the Debtors are entitled to under the Bankruptcy Code. The release, injunction and exculpation provisions contained in this Plan are not intended and shall not be construed to bar the United States from, subsequent to entry of the Confirmation Order, pursuing any police or regulatory action, except to the extent those release and injunctive provisions bar a Governmental Unit from pursuing Claims.

**(2)**     Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to a Governmental Unit under environmental law that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Effective Date; (3) any valid right of set-off or recoupment of the United States against a Debtor; or (4) any liability of the Debtors under environmental law to any Governmental Unit as the owner or operator of property that such Debtor owns or operates after the Effective Date, except those obligations to reimburse costs expended or paid by a Governmental Unit before the Effective Date or to pay penalties owing to a Governmental Unit for violations of environmental laws or regulations that occurred before the Effective Date; provided that the Debtors reserve all of their rights and defenses under applicable law with respect to any such Claims or liabilities. Nor shall anything in this Plan: (i) enjoin or otherwise bar the United States or any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described as not discharged in the preceding sentence, provided that the Debtors and the Liquidation Trustee reserve all of their rights and defenses under applicable law with respect to any such Claims or Liabilities; or (ii) divest any court of jurisdiction

to determine whether any liabilities asserted by the United States or any Governmental Unit are discharged or otherwise barred by this Plan or the Bankruptcy Code.

(3)     Nothing in this Plan shall release or exculpate any non-Debtor, including the Exculpated Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Exculpated Parties, nor shall anything in this Plan enjoin the United States from bringing any claim, suit, action or other proceeding against the Exculpated Parties for any liability whatsoever.

## IX.    Conditions to Confirmation and Effective Date

### A.    Conditions Precedent to Confirmation

The following are conditions precedent to the entry of the Confirmation Order, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section IX.C of the Plan:

(1)     The Confirmation Order is in form and substance reasonably satisfactory to the Debtors; and

(2)     All exhibits to the Plan Supplement are in form and substance reasonably satisfactory to the Debtors.

### B.    Conditions Precedent to the Effective Date

The following are conditions precedent to the occurrence of the Effective Date of the Plan, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section IX.C of the Plan;

(1)     The Bankruptcy Court shall have entered the Confirmation Order, which shall be final; and

(2)     The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Liquidation Trustee to take all actions necessary or appropriate to implement the Plan, including execution and delivery of the Liquidation Trust Agreement, if not previously authorized by the Bankruptcy Court, and the other transactions contemplated by the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan; and

(3)     No stay of the Confirmation Order shall then be in effect, and the Confirmation Order has become a Final Order; and

(4)     The Liquidation Trust has the funds necessary for the Liquidation Trustee to make all payments required to be made on or prior to the Effective Date.

### C.      Waiver of Conditions Precedent

The conditions to the Effective Date set forth in this Article IX may be waived only by consent of the Debtors, without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate this Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

### D.      Effect of Nonoccurrence of Conditions

If the Effective Date does not occur, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

### X.      Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Subchapter V Cases for, among other things, the following purposes:

**(1)**      to hear and determine all matters relating to the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance of Cure amounts and Claims resulting therefrom;

**(2)**      to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

**(3)**      to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests;

**(4)**      to ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

(5)    to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

(6)    to hear and determine any application to modify this Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(7)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

(8)    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

(9)    to issue orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan;

(10)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(11)    to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(12)    to determine any other matters that may arise in connection with or are related to this Plan, the Confirmation Order, any of this Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan or the Plan Supplement;

(13)    to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Subchapter V Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(14)    to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Subchapter V Cases (whether or not the Subchapter V Cases have been closed);

(15)    to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

**(16)** to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

**(17)** to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Subchapter V Cases with respect to any Person;

**(18)** to hear any other matter related to this Plan and not inconsistent with the Bankruptcy Code; and

**(19)** to enter a Final Decree closing the Subchapter V Cases.

## XI. Miscellaneous Provisions

### A. Amendment or Modification of this Plan

Alterations, amendments, or modifications of this Plan may be proposed in writing by the Debtors at any time before the Confirmation Date; provided that this Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123. The Debtors may modify this Plan at any time after Confirmation and before substantial consummation, provided that this Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B. Plan Supplement

Draft forms of certain documents, agreements, instruments, Schedules and exhibits specified in this Plan shall, where expressly so provided for in this Plan, be contained in the Plan Supplement Filed from time to time and shall be incorporated into the Plan. Unless otherwise expressly provided in this Plan, the Debtors may File any Plan Supplement until seven (7) days prior to the voting deadline and may alter, modify or amend any Plan Supplement in accordance this Plan. Holders of Claims or Interests may obtain a copy of the Plan Supplement on the Debtors' website at https://cases.omniagentsolutions.com/?clientId=3697.

### C. Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtors and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**D.     Governing Law**

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent this Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

**E.     Time**

To the extent that any time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

**F.     Severability**

If any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**G.     Revocation**

The Debtors reserve the right to revoke and withdraw this Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw this Plan, this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

**H.     Reservation of Rights**

This Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

## I.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## J.     Service of Documents

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| Debtors | Remarkable Healthcare, LLC<br>904 Emerald Blvd.<br>Southlake, TX 76092<br>Attention: Jon Eric McPike |
| Counsel to Debtors | Gutnicki LLP<br>10440 N. Central Expy., Suite 800<br>Dallas, Texas 75231<br>Attention: Liz Boydston and Alex Rahn<br>lboydston@gutnicki.com<br>arahn@gutnicki.com |
| | Gutnicki LLP<br>45 Rockefeller Plaza, Suite 200<br>New York, New York 10111<br>Attention: Max Schlan<br>mschlan@gutnicki.com |
| United States Trustee | Office of the United States Trustee<br>110 N. College Ave., Suite 300<br>Tyler, TX 75702<br>Attention: John M. Vardeman<br>john.m.vardeman@usdoj.gov |
| Subchapter V Trustee | Subchapter V Trustee<br>10501 N Central Expy., Suite 106<br>Dallas, TX 75231-2203<br>Attention: Mark A. Weisbart<br>mweisbart@haywardfirm.com |

## K.     Entire Agreement

Except as otherwise indicated, on the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and

EXHIBIT K106 - Page 43

representations with respect to the subject matter of this Plan, all of which will have become merged and integrated into this Plan on the Effective Date.

L.      **Inconsistency**

To the extent the Confirmation Order and/or this Plan is inconsistent with any other agreement entered into between the Debtors and any third party, this Plan shall control any previous agreements and the Confirmation Order shall control this Plan.

M.      **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code sections 1125 and 1126, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtors shall be entitled to, and upon the Confirmation Date will be granted, the protections of Bankruptcy Code section 1125(e).

Executed this 19th day of August, 2024.          */s/ Laurie Beth McPike*
Dallas, Texas                                    Laurie Beth McPike
                                                 Chief Executive Officer
                                                 Remarkable Healthcare, LLC

                                                 And

                                                 */s/ Jon E. McPike*
                                                 Jon E. McPike
                                                 Chief Operating Officer
                                                 Remarkable Healthcare, LLC

EXHIBIT K106 - Page 44

**Exhibit A**

**Projected Disposable Income Analysis**

[TO BE FILED]